Mary JONES, et al.,
Plaintiffs-Appellants,

v.

AMALGAMATED WARBASSE HOUSES,
INC., et al., Defendants-Appellees.

No. 14, Docket 83–7181.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1983.

Decided Nov. 14, 1983.

Certiorari Denied April 16, 1984.
See 104 S.Ct. 1929.

Richard F. Bellman and Lewis M. Steel, New York City (Steel & Bellman, P.C., Lawrence Grosberg, New York City, Fair Housing Clinic, Columbia University Law School, Karen Freeman, New York City, of counsel), for plaintiffs-appellants.

Ronald W. Meister, Kornstein Meister & Veisz, New York City, for defendant-appellee, Amalgamated Warbasse Houses, Inc.

Stephen M. Jacoby, Asst. Atty. Gen., State of N.Y., New York City (Robert Abrams, Atty. Gen., State of N.Y., Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Stanley A. Camhi, Asst. Atty. Gen., New York City, of counsel), for defendants-appellees, New York State Div. of Housing and Community Renewal and Richard Berman, Com'r.

Before FEINBERG, Chief Judge, LUMBARD and NEWMAN, Circuit Judges.

FEINBERG, Chief Judge:

This case requires us to decide the extent of a district court's discretion to modify an agreement as to attorneys' fees, otherwise awardable under 42 U.S.C. § 1988, which has been submitted to the court pursuant to Fed.R.Civ.P. 23(e) for approval as part of a proposed settlement of a class action civil rights suit. Plaintiffs Mary Jones and other class representatives appeal from a judgment of the United States District Court for the Eastern District of New York, Thomas C. Platt, J., 97 F.R.D. 355, approving in all respects a negotiated settlement of their housing discrimination suit against defendants Amalgamated Warbasse Houses, Inc. (Warbasse) and the New York State Division of Housing and Community Renewal and its Commissioner (collectively referred to as the State Division), except for the amount of attorneys' fees, which the court reduced from a total of $41,350 to $25,600. A provision for reimbursement of $400 in costs was left undisturbed. For reasons given below, we affirm the judgment of the district court.

I.

In their complaint, plaintiffs alleged systematic exclusion of Black and Hispanic persons from a 2,585-unit publicly subsidized housing development in violation of the Thirteenth and Fourteenth Amendments to the United States Constitution; Title VIII of the Civil Rights Act of 1968,

42 U.S.C. § 3601 et seq.; 42 U.S.C. §§ 1981–1983; and the New York Human Rights Law, N.Y.Exec. Law § 296(2–a) (McKinney 1982). The housing complex is operated by defendant Warbasse, a limited profit mutual housing company supervised by defendant State Division. Plaintiffs requested, and the settlement order granted, certification pursuant to Fed.R.Civ.P. 23(b)(2) as representatives of the class of all Black and Hispanic (Caribbean and Central American) persons who have sought or may seek to live in the Warbasse complex. Plaintiffs sought preliminary and permanent injunctive relief, actual and exemplary damages for the named plaintiffs, and other relief. Defendants moved to dismiss the complaint, and the district court reserved decision on the preliminary relief sought and the motions to dismiss pending the outcome of settlement negotiations.

The case was referred to Magistrate A. Simon Chrein, who assisted in the later stages of the negotiations on the substantive claims and in the entire negotiations concerning attorneys' fees. The parties agreed to, and submitted to the court for approval, a proposed order that provided significant relief to the class in the form of revised procedures for filling vacancies, including the establishment of a minority waiting list and the elimination of a special waiting list for children of existing tenants. The district court found that these procedures will virtually insure that nearly a tenth of the units will be filled by class members. The proposed orders also incorporated the defendants' agreement to pay attorneys' fees of $41,350 and costs of $400.

After notice of the proposed settlement was published in the minority press and mailed to all applicants on the existing waiting lists, written comments were received and a hearing was held. Thereafter, in a memorandum and order dated November 15, 1982, the court approved the proposed settlement and order. The Court found that there was no evidence to suggest collusion among the opposing attorneys in formulating the settlement, that the attorneys had sufficient experience in class action litigation to arrive at a fair and reasonable compromise, that the decisions of the attorneys were informed, that no class members had objected, and that the interests of the class members were served. With respect to the attorneys' fees provided for in the settlement, however, the court expressed concern that the proposed fees "seemed out of line with other matters which it has been called upon to review." Citing *Selzer v. Fleisher*, 629 F.2d 809 (2d Cir.1980), rev'g *Selzer v. Berkowitz*, 477 F.Supp. 686 (E.D.N.Y.1979), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981), and other authority, the court reduced the fees from approximately $129 per hour to approximately $75 per hour, and the total fee requested of $41,350 plus $400 in costs to $25,600 plus $400 in costs. Adopting the same proportion used in the negotiated settlement, the court allocated $15,880 of this total to be paid by defendant Warbasse and the remaining $10,120 by defendant State Division.

Thereafter, plaintiffs' attorneys moved to amend the November 15 order by restoring the fees to the negotiated level. In a supplemental memorandum and order of February 18, 1983, the court considered and rejected a number of arguments by plaintiffs' counsel in support of the higher fees and provided a more extended explanation for the figure it had set and now declined to increase. In particular, the court explained that in fact it had followed the two-step "lodestar" approach called for by *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 470–71 (2d Cir.1974) (*Grinnell I*) and *City of Detroit v. Grinnell Corporation*, 560 F.2d 1093, 1098–99 (2d Cir.1977) (*Grinnell II*). The court also refined the $75 per hour average on which the figure was based to provide $77 per hour to the lead attorney, Richard F. Bellman of Steel & Bellman, P.C., and $70 per hour and $60 per hour, respectively, to the other two attorneys in the case, Lawrence Grosberg of the Columbia University Fair Housing Clinic and Karen Freeman of the Open Housing Center of New York.

II.

Both plaintiffs and the State Division argue that the district court abused its dis-

cretion in setting aside the agreement as to attorneys' fees. They acknowledge the role of the court in guarding against collusion, inexperienced counsel, inadequate information, adverse class impact, and windfall. Plaintiffs maintain, however, that once they have determined that a proposed settlement is not tainted in any of these respects, the judge is not free to set aside a fee agreement negotiated by the parties at arms' length that falls within a range of fairness and reasonableness. Plaintiffs also point to the judicial policy favoring out-of-court settlement and argue that a presumption in favor of a negotiated fee agreement attaches when there is no finding of irregularity, lest the incentive to settle be undermined. The State Division offers similar reasoning, maintaining that a settlement of fees, like a settlement on the merits, imposes some limits on the reviewing court's discretion. It further argues that a fee agreement negotiated by a responsible public official, such as the State Attorney General, who is charged with protecting the interests of state residents and taxpayers, should not lightly be rejected. Defendant Warbasse argues that the court has a duty to make an independent evaluation of the reasonableness of the attorneys' fees regardless of the parties' agreement and that the court did not abuse its discretion in reducing the fees to the amount it found reasonable.

 We reject the argument that the district judge, in light of his findings, could not reduce the fee award. It must be emphasized that a district court has broad discretion to determine the amount of a fee award to be made pursuant to 42 U.S.C. § 1988. *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1941–42, 76 L.Ed.2d 40 (1983); *Gagne v. Maher,* 594 F.2d 336, 344 (2d Cir.1979), aff'd, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). The presence of an arms' length negotiated agreement among the parties weighs strongly in favor of approval, but such an agreement is not binding on the court. *Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir.), *cert. denied,* 448 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980); *Foster v. Boise-Cascade, Inc.,* 577 F.2d 335 (5th Cir.1978) (per curiam), aff'g

420 F.Supp. 674 (S.D.Tex.1976); *Levin v. Mississippi River Corp.,* 377 F.Supp. 926, 930–31 (S.D.N.Y.) (Weinfeld, J.), aff'd, 508 F.2d 836 (2d Cir.1974), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). A district court's discretion is not limited to situations in which it finds windfall, adverse class impact, or other irregularity in a fee agreement. Despite the absence of such factors, if the court finds good reason to do so, it may reject an agreement as to attorneys' fees just as it may reject an agreement as to the substantive claims. The court's perspective and obligations are different from those of the parties. *Malchman v. Davis,* 706 F.2d 426, 435–36 (2d Cir.1983); *Grinnell I,* 495 F.2d at 469–70; *Alpine Pharmacy, Inc. v. Chas. Pfizer & Co.,* 481 F.2d 1045, 1049–51 (2d Cir.), *cert. denied,* 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973). The judge's duty to safeguard the public interest is especially important when no class members are likely to object and the aggregate impact of a settlement is greater than the impact on any one defendant. Thus, this court has indicated that fee awards under § 1988 should be moderate, see *Grinnell I,* 495 F.2d at 469–70, and additionally that a court has an obligation under Fed.R.Civ.P. 23(e) in any class action to make sure that a class is taken care of fairly, especially in a settlement where no one is likely to complain.

 On the other hand, the court must consider competing policies as well. There is the congressional policy favoring fee awards in order to enforce the civil rights laws by private litigation. See *McCann v. Coughlin,* 698 F.2d 112, 128 (2d Cir.1983); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34, 36–37 (2d Cir.1978). Fee shifting is still not that common and a statute specifically authorizing it should not be construed in a niggardly manner. Moreover, there is the important policy of encouraging settlements. See *Hensley v. Eckerhart,* 103 S.Ct. at 1941. The settlement process is undermined if the court attaches little weight to the fact that the parties have reached an agreed figure reflecting, as in this case, compromise on both

sides. In exercising its discretion, the district court must reconcile these policies on the facts of each case. In deciding whether to accept fee settlements, the court should treat them essentially as it treats settlements on the merits, according them a presumption of regularity once it finds no impropriety, but aware that the presumption can be overcome for good reason, including the impact on the class, the public perception of the appropriateness of the fees, and the range of awards allowed in similar cases. Once a court has decided that a fee settlement should not be accepted, we think it need not limit itself to the alternative of outright rejection, but may exercise its discretion to determine a reasonable fee. The court has a special responsibility to supervise the matter of attorneys' fees in class actions and in any litigation involving a fee-shifting statute like section 1988. Even in a case such as this, where any decrease in the amount of the fees will not inure to the benefit of the plaintiff class, which received only injunctive relief, the court's downward revision of a fee settlement unacceptable to the court will promote confidence in the integrity of the judicial process and is a proper exercise of authority over officers of the court in litigation pending before the court.

In the instant case, the district court carefully considered the many factors relevant to a decision whether to accept or reject a fee settlement and set out its reasons for rejecting the fees agreed upon and for making a reduction. See *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974), cited with approval in *Hensley v. Eckerhart,* 103 S.Ct. at 1937–38. We note that the court also mentioned the participation of a governmental agency in the negotiations and its endorsement of the results as "a factor weighing heavily in favor of settlement approval." We believe that the court did consider as significant the fact of settlement of the fee dispute as well as of the underlying dispute. While not all of us would have reduced the fee award when, as here, a federal magistrate assisted in the negotiations and the State Attorney General joined in the nego-

tiations and the agreement, we all agree that on this record we cannot say that the court abused its discretion in doing so.

### III.

Plaintiffs' remaining arguments require little discussion. Plaintiffs argue that the court erroneously reduced the fee award in part because public funds were involved. We have no reason to doubt the judge's explanation in his supplemental memorandum and order that this fact caused him to scrutinize the fee arrangement with more care, but was not a reason for the reduction. Plaintiffs also contend that the court did not follow the two-step "lodestar" approach mandated by *Grinnell I,* 495 F.2d at 470–71, and *Grinnell II,* 560 F.2d at 1098–99. While it is true that rates awarded to civil rights counsel should ordinarily be on par with market rates for private attorneys engaged in other complex federal litigation, S.Rep. No. 1011, 94th Cong., 2d Sess. 6 (1976), reprinted in 1976 U.S.Code Cong. & Ad.News 5908, 5913; *New York State Association for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 at 1149 (2d Cir.1983), and it is preferable for the district court to make express findings as to what those rates are, we believe the court satisfied this requirement by looking to the hourly rates awarded in comparable recent cases. We do not need to reach the arguments concerning the adequacy of counsel's time records because, despite passing reference to this issue in a footnote of its supplemental memorandum and order, the court did not rely on inadequacy of time records in reaching its decision. It is worth noting, however, that the burden is on counsel in the first instance to submit detailed contemporaneous time records. *New York State Association for Retarded Children, Inc. v. Carey* at 1147–1148; *Hensley v. Eckerhart,* 103 S.Ct. at 1943 (Burger, C.J., concurring); *McCann v. Coughlin,* 698 F.2d at 131.

The judgment of the district court is affirmed.