**Robert R. SMILEY, III, Appellant,**

v.

**Milton G. SINCOFF and Michel F. Baumeister, Appellees.**

**No. 729, Docket 91–7864.**

United States Court of Appeals, Second Circuit.

Argued Jan. 29, 1992.

Decided March 5, 1992.

Michael J. Pangia, Washington, D.C. (Gilman, Olson & Pangia, on the brief), for appellant.

Steven R. Pounian, New York City (Kreindler & Kreindler, on the brief), for appellees.

Before TIMBERS, WINTER and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

This appeal arises in the consolidated proceeding of nearly 300 civil actions against Spantax Airlines, McDonnell Douglas and United Airlines following the crash of a Spantax DC–10, Flight BX–995 on takeoff from Malaga, Spain on September 13, 1982.

On March 18, 1983, Eugene H. Nickerson, *District Judge*, appointed a plaintiffs' committee (the committee) to coordinate all aspects of the litigation in the Eastern District of New York.

By a subsequent order dated May 25, 1983, Magistrate John L. Caden established a fee structure pursuant to which all non-committee member attorneys placed a percentage of their fees in escrow for subsequent pro rata distribution among committee members as fees for their efforts in the liability aspect of the case. Committee members were exempt from placing their individual fees in escrow.

One committee member, appellant Smiley, entered into a retainer agreement with a non-member, pursuant to which Smiley agreed to assume responsibility for nineteen of the non-member's cases in exchange for a fee. By an order dated July 26, 1991 (which is the subject of this appeal), the court ordered that any fee paid to Smiley as a result of this subsequent retainer agreement was to be distributed pro rata among the committee members, as required by Magistrate Caden's fee structure order.

We hold that the court did not abuse its discretion in ordering such distribution of Smiley's fee. We affirm.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

The crash at Malaga resulted in the deaths of 48 of the 380 passengers and 3 crew members. Several passengers sustained severe injuries. The nearly 300 individual passenger death and injury actions referred to above were commenced in various district courts across the United States. The claims of all passengers aboard the airline were governed by the Warsaw Convention Treaty–Montreal Agreement, which imposed an absolute no-fault liability upon Spantax with a damage limitation of $75,000 in most instances. On January 4, 1983, the Judicial Panel on Multidistrict Litigation ordered the consolidation of all actions and transferred the cases to the Eastern District of New York pursuant to 28 U.S.C. § 1407 (1988). They were assigned to Judge Nickerson who in turn assigned Magistrate Caden to handle appropriate matters.

On March 18, 1983, following a hearing before Magistrate Caden, the committee was created to coordinate all liability aspects of the litigation on behalf of all plaintiffs in the various actions. The committee was created to avoid duplicate discovery and widely varying pre-trial rulings as a result of the great number of civil actions. Membership on the committee was limited to those attorneys specifically appointed by the Magistrate.

The committee consisted of attorneys with significant experience in mass air disaster litigation. Milton G. Sincoff was appointed lead counsel for the committee. Prior to his appointment, 74 passengers had retained him as counsel in their own individual actions arising from the Malaga crash. The second member of the committee, Frank H. Granito, Jr., likewise had been retained by approximately 30 individual passengers before his appointment to the committee. Finally, Robert R. Smiley, III, appellant on this appeal, had been retained by approximately 48 individual passengers before his appointment as a member of the committee.

On May 25, 1983, Magistrate Caden set forth the committee's responsibilities and fee structures in a pre-trial order. The order authorized the committee to prepare, serve, file and argue liability motions, conduct discovery, conduct any necessary depositions, enter into liability fact stipulations and act as spokespersons at liability pre-trial and trial conferences. In short, the committee was authorized to conduct the liability phase of the litigation on behalf of all plaintiffs.

Non-committee member attorneys had access to all relevant documents and were afforded the opportunity to voice divergent positions on behalf of their own clients whenever necessary. To assist them, Michel F. Baumeister, a partner of Sincoff at the time, was appointed as liaison counsel. Baumeister was responsible for the technical administration of the case, which included maintaining files, distributing progress reports on behalf of the committee, and

ensuring that all notices, orders and other liability papers were distributed among the remaining plaintiffs' attorneys. The committee members agreed that Baumeister did not have any other "powers of Committee membership".

Magistrate Caden's order of May 25 also established a fee structure for members of the committee. The order provided that any committee fee was to be paid by all attorneys on behalf of their clients. Plaintiffs were not to pay fees to the committee out of their own recoveries. The fee was not to exceed 8% of the gross recovery, and could not exceed one-half of the total attorneys' fees collected for each claim. Any plaintiffs' attorney could apply to the court for an order granting a lower fee or no fee at all due to circumstances unique to the individual claim.

All fees collected on behalf of the committee were to be placed in escrow and, following an application to the court for distribution, the fees were to be distributed pro rata among the committee members based on their individual participation in the liability effort. Notably, several groups of plaintiffs were excluded from the mandatory payment of fees to the committee. First, the individual committee members agreed that none of their own firms would pay the Committee any fee on behalf of those clients who originally had retained them before the committee was established, because "they intend[ed] to fully and equally contribute to the liability effort." Second, the order excluded those plaintiffs who had not retained or who refused to pay an attorney. Third, the order excluded any plaintiff or claimant who agreed to a settlement before September 6, 1983 upon notice to the committee. Finally, the order excluded those plaintiffs whose damages did not exceed the Warsaw Convention Treaty limit of $75,000.

Meanwhile, in May 1983, Smiley began negotiations with Harold Sullivan, a non-committee member attorney representing 19 plaintiffs in actions arising from the Malaga crash. Pursuant to the May 25 order, as a non-committee member, Sullivan, like all other plaintiffs' attorneys, was obligated to pay the established committee fee. In these negotiations with Smiley, Sullivan sought to retain Smiley as the attorney for his 19 cases.

Before finalization of the Smiley–Sullivan agreement, the committee as a whole discussed the issue of whether the subsequent acceptance of an 8% liability retainer by one committee member would continue the obligation for a committee fee or be exempt. At a meeting of the committee on March 7, 1983, Smiley was the only member of the committee who refused to agree that any such fee should be paid to the committee, rather than to the individual committee member exclusively. Unable to reach a consensus on this issue, the committee agreed that it would be resolved by the court at the end of the litigation.

The original Smiley–Sullivan agreement of May 1983 provided that Smiley would assume responsibility for both the liability and damages phases of Sullivan's actions in exchange for a fee of 15% of the net recovery plus expenses. That agreement ultimately was modified in August 1983 to provide that Smiley would prosecute solely the liability phase of each action in exchange for the lesser of 8% of the net recovery or one-half of Sullivan's recovery in fees. In substance, this agreement closely paralleled Magistrate Caden's fee structure order of May 25, 1983.

On December 20, 1983, the court granted partial summary judgment against the airline in the liability phase of the litigation, allowing plaintiffs to recover full compensatory damages beyond the Warsaw Convention limitation of $75,000. Subsequently, Sincoff, as lead counsel, proposed that the committee voluntarily request the court to reduce the committee's liability fee from 8% to 3%. Over Smiley's initial objections, this proposal was accepted by Magistrate Caden in a supplemental order of August 2, 1984.

By December 1990, all plaintiffs' attorneys had contributed the 3% fee established by the order. The amount held in escrow was $356,041 in fees and $133,377 in interest. Distribution of the fees was deferred, however, pending resolution of

the issue of the proper distribution of the fees received by Smiley pursuant to his agreement with Sullivan. Based on their agreement, Smiley sought to collect $266,-800 in fees from Sullivan. With committee members unable to resolve the issue among themselves, Sincoff and Baumeister filed a joint application for an order providing for pro rata distribution among committee members of Smiley's total fee from Sullivan. In the alternative, Sincoff and Baumeister sought an order requiring the return of the total fee to the plaintiffs in the 19 cases involved. Both Smiley and Granito, another committee member, opposed the distribution of Smiley's fee.

On July 26, 1991, the court ordered that Smiley's full 8% fee from Sullivan be distributed among the committee members as required by the fee structure set forth in Magistrate Caden's May 25, 1983 order. Since this signalled the end of the litigation, the committee was dissolved.

We agree with the court that to allow Smiley to retain the full 8% fee pursuant to his agreement with Sullivan would result in serious undermining of the whole system of plaintiffs' committees. We affirm the court's July 26, 1991 order.

## II.

■ The Supreme Court has held that ideally a request for attorney's fees should not result in a second litigation. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). Whenever possible, settlement between the parties of the fee amount is encouraged. Where such settlement proves impossible, however, the district court is vested with broad discretion in determining the amount and distribution of the fee award. *Id. See also Manual for Complex Litigation Second* § 24.12 at 182–83 (1985); *In Re Agent Orange,* 818 F.2d 226, 237 (2 Cir.), *cert. denied,* 484 U.S. 926 (1987) (discretion exercised by district court in class action); *Jones v. Amalgamated Warbasse Houses, Inc.,* 721 F.2d 881, 884 (2 Cir.1983), *cert. denied,* 466 U.S. 944 (1984) (substantial discretion granted to district court in reducing attorney's fees claimed under 42 U.S.C. § 1988 (1988)); *In Re San Juan Dupont Plaza Hotel Fire Litigation,* 768 F.Supp. 912, 920 (D.P.R.1991) ("The District Court has broad equitable powers to supervise the collection of attorney fees and monitor contingency fee agreements.") (citations omitted).

District courts have exercised this power to establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation. *In Re Air Crash Disaster at Florida Everglades,* 549 F.2d 1006, 1016 (5 Cir.1977) ("We hold that the district court had the power to direct that the Committee and its counsel be compensated and that requiring the payment come from other [non-member] attorneys was permissible."). District courts also have exercised this power to determine both the method of computation of fees and the method of distribution of a common fund among committee members. *See, e.g., In Re Agent Orange,* 818 F.2d 216 (2 Cir.), *cert. denied,* 484 U.S. 926 (1987) (invalidating fee sharing agreement among committee members in class action); *In Re Agent Orange, supra,* 818 F.2d at 226 (examining district court's method of calculating fee); *Jones, supra,* 721 F.2d at 885. District courts also have intervened to modify tentative fee agreements between the parties themselves, even if such agreements were arm's length transactions. *Jones, supra,* 721 F.2d at 884. "If the Court finds that a[n existing] fee agreement provides for an unethically excessive fee, it may sparingly exercise its supervisory powers to limit the amount an attorney may actually receive." *In Re San Juan Dupont Plaza, supra,* 768 F.Supp. at 922 (citing *Sargeant v. Sharp,* 579 F.2d 645, 648 (1 Cir.1978)).

A district court's exercise of this broad discretion to review and modify a fee agreement is "not limited to situations in which it finds windfall, adverse class impact, or other irregularity...." *Jones, supra,* 721 F.2d at 884. Whenever a court finds "good reason to do so, it may reject an agreement as to attorneys' fees just as it may reject an agreement as to the substantive claim[ ]." *Id.* If the district court intervenes to decide the amount of the fee,

however, it must "provide a concise but clear explanation of its reasons for the fee award." *Manual for Complex Litigation Second, supra,* § 24.12 at 183 (citing *Hensley, supra,* 461 U.S. at 437).

■ We hold that there was no abuse of discretion in this case. Judge Nickerson's reasons for requiring the distribution of Smiley's fee are set forth clearly in his July 26, 1991 order. He cogently stated:

"There can be little doubt that the purpose of the Committee would be seriously undermined and the court ill-served were individual members permitted to make separate arrangements with plaintiffs' attorneys to do the work that the Committee was appointed to do. A Committee depends for it [sic] success on cooperation among its members and would function less effectively if its members were to compete with one another and with the Committee itself to serve plaintiffs' attorneys on an individual basis."

We agree.

While it may be said that Smiley's effort to retain the attorney's fees for the 19 cases which he took over from Sullivan was within the letter of the provisions set forth in Magistrate Caden's order, we agree with the district court's holding that his side agreement with Sullivan placed him beyond the spirit of Magistrate Caden's order.

The court's conclusion that Smiley threatened to undermine the committee's work is well supported. First, the Smiley–Sullivan agreement was made long after Smiley's appointment to the committee. Smiley knew from his meetings with the committee that several members opposed the practice of accepting a retainer and claiming that the resulting fees were exempt from the mandatory fee order. Smiley was an attorney with substantial experience in mass air disaster litigation. The notion of a plaintiffs' committee and the disbursement of fees was not foreign to him. Just as courts have looked to such factors to evaluate the reasonableness of a fee agreement between attorneys and their clients, *e.g., Dunn v. H.K. Porter Co.,* 602 F.2d 1105, 1110 (3 Cir.1979), we hold that the facts of the instant case provide ample support for the district court's exercise of discretion in ordering the disbursement of Smiley's fee.

Finally, while we recognize that some circumstances may warrant a special fee arrangement, generally fee arrangements ordered by district courts attempt to compensate attorneys in accordance with the time and effort expended, and we reverse such awards only where "it is apparent that the size of the award is out of line with the degree of effort reasonably needed to prevail in the litigation." *In Re Agent Orange, supra,* 818 F.2d at 237; *see also City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2 Cir.1974). In the instant case, there is nothing whatsoever in the record that Smiley provided any unique service to Sullivan's clients to warrant an independent award to him of attorney's fees pursuant to the Smiley–Sullivan agreement. Rather, his activities on behalf of Sullivan's former 19 clients did not differ from those services provided to all plaintiffs by Smiley in his capacity as a committee member. Indeed, even the 8% liability fee negotiated in the Smiley–Sullivan agreement exactly matched the 8% liability fee governing all plaintiffs' attorneys, as set forth in Magistrate Caden's order. Without any remarkable activity to justify Smiley's *additional* fee of $266,800 (an amount which we note is approximately 75% of the fee collected by the committee for liability efforts on behalf of *all* plaintiffs combined), we affirm the district court's order requiring distribution of the fees to those who contributed in the liability effort.

### III.

To summarize:

We hold that the district court did not abuse its discretion in ordering the distribution among the committee members of the fee received by Smiley under the Smiley–Sullivan agreement.

Affirmed.