**PUBLISHED**

# UNITED STATES COURT OF APPEALS

### FOR THE FOURTH CIRCUIT

In Re: MRRM, P.A., formerly
known as Law Offices of Ness,
Motley, Loadholt, Richardson &
Poole, former counsel to plaintiff
class,

*Appellant,*

In Re: RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN,

*Appellee,*

and

In Re: SPEIGHTS & RUNYAN

CENTRAL WESLEYAN COLLEGE, on
behalf of itself and all others
similarly situated,

*Plaintiff,*

v.

W.R. GRACE & COMPANY; NATIONAL
GYPSUM COMPANY; UNITED STATES
GYPSUM COMPANY, a Delaware
Corporation; AC&S, INCORPORATED,
a Pennsylvania Corporation;
ACOUSTICS, INCORPORATED; A P
GREEN REFRACTORIES COMPANY, a
Delaware Corporation; AMCHEM
PRODUCTS, INCORPORATED; AMERICAN
ASBESTOS PRODUCTS COMPANY, a
California Corporation; AMERICAN
ENERGY PRODUCTS, INCORPORATED;

No. 04-1838

ARMSTRONG WORLD INDUSTRIES, INCORPORATED; ASBESTOS CORPORATION, LIMITED; ASBESTOS PRODUCT MANUFACTURING CORPORATION; ASBESTOS CORPORATION OF AMERICA INCORPORATED; ASBESTOS FIBERS, INCORPORATED; ASBESTOSPRAY CORPORATION; ASTEN GROUP, INCORPORATED; ATLAS ASBESTOS CORPORATION, LIMITED; ATLAS TURNER, INCORPORATED; BABCOCK & WILCOX COMPANY, a Delaware Corporation; BASIC, INCORPORATED, a Delaware Corporation; BELL ASBESTOS MINES, LIMITED; BRINCO MINING LIMITED, formerly known as Cassiar Resources Limited; CALIFORNIA PRODUCTS CORPORATION; CALIFORNIA PRODUCTS INTERNATIONAL INCORPORATED; CAPE ASBESTOS FIBRES, LIMITED; CAPE INDUSTRIES, LIMITED; CAREY CANADA, INCORPORATED; C. E. THURSTON & SONS INCORPORATED, a Virginia Corporation; THE CELOTEX CORPORATION; CERTAINTEED CORPORATION, a Maryland Corporation; CERTAINTEED SALES CORPORATION; CHARTER CONSOLIDATED INVESTMENTS LIMITED; CHARTER CONSOLIDATED, LIMITED; CHARTER CONSOLIDATED SERVICES; CHARTER INDUSTRIES; CHEMROCK

CORPORATION; COMBUSTION ENGINEERING, INCORPORATED; CROWN CORK & SEAL COMPANY, INCORPORATED, a New York Corporation; DANA CORPORATION, a Virginia Corporation; DODSON MANUFACTURING COMPANY; EAGLE-PICHER INDUSTRIES, INCORPORATED; EMPIRE ACE INSULATION MANUFACTURING CORPORATION, a New York Corporation; EMPIRE ASBESTOS PRODUCTS, INCORPORATED, a New York Corporation; FIBREBOARD CORPORATION; FLINTKOTE COMPANY, a Massachusetts Corporation; FOSTER WHEELER CORPORATION, Successor-in-Interests to Forty-Eight Insulations Incorporated, a New York Corporation; GAF CORPORATION; GARLOCK; GENERAL REFRACTORIES COMPANY, US Refractories Division; GEORGIA PACIFIC CORPORATION, a Georgia Corporation; GRANT WILSON, INCORPORATED, an Illinois Corporation; GREFCO, INCORPORATED, Minerals Division; H & A CONSTRUCTION CORPORATION, formerly known as Spraycraft, a New York Corporation; HAMILTON MATERIALS, INCORPORATED, a California Corporation; H. K. PORTER INCORPORATED; HIGHLAND STUCCO & LIME PRODUCTS, INCORPORATED; HOLLYWOOD STUCCO PRODUCTS, INCORPORATED;

HUXLEY DEVELOPMENT CORPORATION; IPA SYSTEMS, INCORPORATED, a Pennsylvania Corporation; J. W. ROBERTS, LIMITED; JOHN CRANE-HOUDAILLE, INCORPORATED, formerly known as Crane Packing Company; KEENE CORPORATION; KAISER REFRACTORIES, a division of Kaiser Aluminum and Chemical Corporation; KAISER GYPSUM COMPANY; LAC D'AMAINTE DU QUEBEC, LTEE; NICOLET, INCORPORATED; OHIO LIME COMPANY; OWENS-CORNING FIBERGLAS CORPORATION; OWENS-ILLINOIS, INCORPORATED; PITTSBURGH-CORNING CORPORATION; PFIZER, INCORPORATED; QUIGLEY COMPANY, INCORPORATED; RAYMARK INDUSTRIES, INCORPORATED; ROCK WOOL MANUFACTURING COMPANY, INCORPORATED; RYDER INDUSTRIES, INCORPORATED, a Texas Corporation; SEALTITE TEXTILE CORPORATION, a Delaware Corporation; SOUTHERN TEXTILE, a Delaware Corporation; SPECIAL ASBESTOS COMPANY, INCORPORATED; SPRAYON INSULATION & ACOUSTIC, INCORPORATED; SPRAYED INSULATION CORPORATION; SPRAYON RESEARCH CORPORATION; STARR-DAVIS COMPANY, INCORPORATED, a North Carolina Corporation; STANDARD INSULATIONS, INCORPORATED; STANDARD ASBESTOS MANUFACTURING AND INSULATING COMPANY, a Missouri Corporation;

TAF International, Limited, formerly known as Turner Asbestos Fibres, Limited; Turner Asbestos Fibres, Limited, a Foreign Corporation; Turner & Newall, Limited, a Foreign Corporation; Uniroyal Incorporated; USG Corporation, a Delaware Corporation; United States Mineral Products Company; Vermont Asbestos Group, a Vermont Corporation; Vimasco Corporation; Western Mineral Products Company, Incorporated; H. K. Porter Asbestos Trust,

*Defendants.*

Basil H. Thomson, Jr.; John G. Hill, Jr.; Robert L. Potts; Earl V. Brown; Estelle A. Fishbein; Beverly E. Ledbetter; Dennis C. Hart,

*Amicus Curiae,*

Highlands Insurance Company; American Reinsurance Company; Concordia College; Furman University; Claflin University; Newberry College,

*Movants.*

In Re: MRRM, P.A., formerly
known as Law Offices of Ness,
Motley, Loadholt, Richardson &
Poole, former counsel to plaintiff
class,

*Appellant,*

In Re: RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN,

*Appellee,*

and

In Re: SPEIGHTS & RUNYAN

CENTRAL WESLEYAN COLLEGE, on
behalf of itself and all others
similarly situated,

*Plaintiff,*

v.

W.R. GRACE & COMPANY; NATIONAL
GYPSUM COMPANY; UNITED STATES
GYPSUM COMPANY, a Delaware
Corporation; AC&S, INCORPORATED,
a Pennsylvania Corporation;
ACOUSTICS, INCORPORATED; A P
GREEN REFRACTORIES COMPANY, a
Delaware Corporation; AMCHEM
PRODUCTS, INCORPORATED; AMERICAN
ASBESTOS PRODUCTS COMPANY, a
California Corporation; AMERICAN
ENERGY PRODUCTS, INCORPORATED;

No. 04-1859

ARMSTRONG WORLD INDUSTRIES, INCORPORATED; ASBESTOS CORPORATION, LIMITED; ASBESTOS PRODUCT MANUFACTURING CORPORATION; ASBESTOS CORPORATION OF AMERICA INCORPORATED; ASBESTOS FIBERS, INCORPORATED; ASBESTOSPRAY CORPORATION; ASTEN GROUP, INCORPORATED; ATLAS ASBESTOS CORPORATION, LIMITED; ATLAS TURNER, INCORPORATED; BABCOCK & WILCOX COMPANY, a Delaware Corporation; BASIC, INCORPORATED, a Delaware Corporation; BELL ASBESTOS MINES, LIMITED; BRINCO MINING LIMITED, formerly known as Cassiar Resources Limited; CALIFORNIA PRODUCTS CORPORATION; CALIFORNIA PRODUCTS INTERNATIONAL INCORPORATED; CAPE ASBESTOS FIBRES, LIMITED; CAPE INDUSTRIES, LIMITED; CAREY CANADA, INCORPORATED; C. E. THURSTON & SONS INCORPORATED, a Virginia Corporation; THE CELOTEX CORPORATION; CERTAINTEED CORPORATION, a Maryland Corporation; CERTAINTEED SALES CORPORATION; CHARTER CONSOLIDATED INVESTMENTS LIMITED; CHARTER CONSOLIDATED, LIMITED; CHARTER CONSOLIDATED SERVICES; CHARTER INDUSTRIES; CHEMROCK

CORPORATION; COMBUSTION ENGINEERING, INCORPORATED; CROWN CORK & SEAL COMPANY, INCORPORATED, a New York Corporation; DANA CORPORATION, a Virginia Corporation; DODSON MANUFACTURING COMPANY; EAGLE-PICHER INDUSTRIES, INCORPORATED; EMPIRE ACE INSULATION MANUFACTURING CORPORATION, a New York Corporation; EMPIRE ASBESTOS PRODUCTS, INCORPORATED, a New York Corporation; FIBREBOARD CORPORATION; FLINTKOTE COMPANY, a Massachusetts Corporation; FOSTER WHEELER CORPORATION, Successor-in-Interests to Forty-Eight Insulations Incorporated, a New York Corporation; GAF CORPORATION; GARLOCK; GENERAL REFRACTORIES COMPANY, US Refractories Division; GEORGIA PACIFIC CORPORATION, a Georgia Corporation; GRANT WILSON, INCORPORATED, an Illinois Corporation; GREFCO, INCORPORATED, Minerals Division; H & A CONSTRUCTION CORPORATION, formerly known as Spraycraft, a New York Corporation; HAMILTON MATERIALS, INCORPORATED, a California Corporation; H. K. PORTER INCORPORATED; HIGHLAND STUCCO & LIME PRODUCTS, INCORPORATED; HOLLYWOOD STUCCO PRODUCTS, INCORPORATED;

Huxley Development Corporation; IPA Systems, Incorporated, a Pennsylvania Corporation; J. W. Roberts, Limited; John Crane-Houdaille, Incorporated, formerly known as Crane Packing Company; Keene Corporation; Kaiser Refractories, a division of Kaiser Aluminum and Chemical Corporation; Kaiser Gypsum Company; Lac D'Amainte du Quebec, Ltee; Nicolet, Incorporated; Ohio Lime Company; Owens-Corning Fiberglas Corporation; Owens-Illinois, Incorporated; Pittsburgh-Corning Corporation; Pfizer, Incorporated; Quigley Company, Incorporated; Raymark Industries, Incorporated; Rock Wool Manufacturing Company, Incorporated; Ryder Industries, Incorporated, a Texas Corporation; Sealtite Textile Corporation, a Delaware Corporation; Southern Textile, a Delaware Corporation; Special Asbestos Company, Incorporated; Sprayon Insulation & Acoustic, Incorporated; Sprayed Insulation Corporation; Sprayon Research Corporation; Starr-Davis Company, Incorporated, a North Carolina Corporation; Standard Insulations, Incorporated; Standard Asbestos Manufacturing and Insulating Company, a Missouri Corporation;

TAF International, Limited,
formerly known as Turner Asbestos
Fibres, Limited; Turner Asbestos
Fibres, Limited, a Foreign
Corporation; Turner & Newall,
Limited, a Foreign Corporation;
Uniroyal Incorporated; USG
Corporation, a Delaware
Corporation; United States
Mineral Products Company;
Vermont Asbestos Group, a
Vermont Corporation; Vimasco
Corporation; Western Mineral
Products Company, Incorporated;
H. K. Porter Asbestos Trust,

*Defendants.*

Basil H. Thomson, Jr.; John G.
Hill, Jr.; Robert L. Potts; Earl V.
Brown; Estelle A. Fishbein;
Beverly E. Ledbetter; Dennis C.
Hart,

*Amicus Curiae,*

Highlands Insurance Company;
American Reinsurance Company;
Concordia College; Furman
University; Claflin University;
Newberry College,

*Movants.*

Appeals from the United States District Court
for the District of South Carolina, at Charleston.
Sol Blatt, Jr., Senior District Judge.
(CA-87-1860-2-8)

Argued: March 16, 2005

Decided: April 18, 2005

Before WILKINSON, NIEMEYER, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Motz joined.

**COUNSEL**

**ARGUED:** William Howell Morrison, MOORE & VAN ALLEN, P.L.L.C., Charleston, South Carolina, for Appellant. Edward James Westbrook, RICHARDSON, PATRICK, WESTBROOK & BRICK-MAN, L.L.C., Mt. Pleasant, South Carolina, for Appellee. **ON BRIEF:** Frederick C. Baker, MOTLEY RICE, L.L.C., Mt. Pleasant, South Carolina, for Appellant.

**OPINION**

WILKINSON, Circuit Judge:

In this case we consider the appropriate allocation of a class action attorney fee award among three law firms. The fee award itself was previously approved and is not in controversy. Instead, one firm has appealed the district court's distribution of that award, essentially claiming that its share was insufficient.

We affirm, albeit with reservations about the conclusory nature of the district court's order allocating the fee.

I.

For well over a decade, class counsel litigated and eventually set-

tled an asbestos-related nationwide class action lawsuit on behalf of colleges and universities. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993) (affirming conditional certification of the class). Class counsel were the firms Ness, Motley, Loadholt, Richardson & Poole ("Ness Motley")[1] and Speights & Runyan. The eventual common fund totaled approximately $70 million.

In December 2001, class counsel petitioned the district court for fees. They requested 28.75% of the cash recovery, amounting to about $20 million. The district court approved the entire request, after a thorough application of *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting the twelve fee-shifting factors of *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The *Barber* factors include such considerations as the time and labor required, the novelty or difficulty of the issues litigated, customary fees in similar situations, and the quality of the results involved. The district court thoroughly examined each of them. *See* JA 758-70.

The court acknowledged that the fee was being awarded even though the work had not been completed. Indeed, the administration of the common fund continues to this day. The district judge emphasized that "it is important to note that there is still much work to be done in this case." The fee award was thus predicated on class counsel's duty to honor its obligations to the class.

Subsequent to the fee award, Edward Westbrook, a Ness Motley partner, distributed 60% of the fee — 50% to Ness Motley and 10% to Speights & Runyan. The remaining 40% was withheld due to difficulties in determining its allocation. Westbrook was in a position to do this because he had exercised primary leadership over the case since its inception. However, in February 2002, several shareholders — including Westbrook — left Ness Motley to form the new firm of Richardson Patrick Westbook & Brickman ("RPWB"). The district court, recognizing Westbrook's role, agreed that he and his new firm

---

[1]Between December 2001 and the present — the times most relevant to this case — Ness Motley has used a variety of different names. Although it is currently known as MRRM, P.A., as shown in the caption of this case, to minimize confusion we will refer to it throughout as "Ness Motley."

should continue as co-lead class counsel. Thus, there were now three firms involved in the settlement, the administration, or both: Ness Motley, Speights & Runyan, and RPWB.

In October 2003, following unsuccessful attempts among the three firms to allocate the remaining 40% of the award, Westbrook petitioned the district court to divide it. On May 27, 2004, the district court held oral argument for this purpose. It began by inviting Westbrook and Daniel Speights to meet privately in the courthouse library and emerge with a recommendation. Unsurprisingly, an attorney for Ness Motley objected to being excluded from this meeting. Westbrook and Speights nonetheless met and agreed that the entire fee be divided such that, out of the total, Ness Motley receive 51%, Speights & Runyan receive 34%, and RPWB receive 15%. The court allowed Ness Motley an opportunity to respond with its own proposal — namely, that it deserved the entire remaining unallocated fee (or 90% of the total), that Speights & Runyan should receive only the 10% that it already had been given, and RPWB deserved nothing at all.

Roughly half-way through the hearing, the district judge commented that "I'm impressed by the — I can visualize trying to pay out this money to all these colleges, that job is going to be one terrific job, I understand that." During oral argument before the court of appeals, in fact, counsel continually repeated this very sentence in attempting to assure us that adequate reasons for the allocation existed. At the end of the district court hearing, without having explained what it was that particularly persuaded him, the judge stated:

> Well, it's got to end. The whole thing has got to end. I've listened to the argument, the arguments have been convincing. I'm going to write a very short order, based on the arguments this day heard. And I think that the arguments have caused me to change my mind somewhat.

The judge then stated that his allocation was based on $20 million:

> I'm going to award Speights and Runyan six million five; [Ness Motley], eleven million; and [RPWB], two million five. Now, that's it. I'm going to put that in the order, based

on a twenty million dollar fee, and direct the attorneys to work out the mechanics.

He made no further explanation, but before departing the bench, the judge acknowledged "that there isn't anybody particularly happy with the division, but I guess you can't satisfy everybody. If there were a way to do that, I'd like to do it. But after listening to the arguments, I think that's a reasonable division."

On June 28, 2004, the district court entered an order reflecting this allocation, "[f]or the reasons stated at hearing, and in consideration of the applicable law and facts . . . ." The court stated that RPWB was to be compensated for its work, as were the other firms. The district court alluded generally to this point in a footnote in its order.[2]

Ness Motley timely appealed. We review fee allocations, like the initial award of an attorney fee, under an abuse of discretion standard of review. *Barber*, 577 F.2d at 226. Because Ness Motley has given us no reason sufficient to reverse under this deferential standard, we affirm, albeit with reservation.

## II.

Ness Motley raises substantive and procedural challenges to the allocation in favor of RPWB.

### A.

Ness Motley believes that the district court erred in awarding RPWB any fees at all, and that even if RPWB is entitled to some fees, the district court awarded it too great a share. Ness Motley emphasizes that the fee has already been awarded, explicitly conditioned on counsel continuing to administer the common fund and to meet all

---

[2]The footnote explained: "This amount is awarded to cover the work the Richardson, Patrick firm must expend, independent of the former Ness, Motley firm, to resolve all remaining issues regarding December 21, 2001 Settlement Fund. This includes the costs which may be incurred to research and finalize a potential re-calculation of the total attorneys' fees award due to an unforeseen tax issue."

other obligations class counsel owes to the class. According to Ness Motley, RPWB, largely composed of individuals who have already been paid from Ness Motley's share of the fee (and who, consistent with their separation agreement, will receive a portion of any future allocations), should not be paid "twice." Had Westbrook not withheld 40% of the fee before leaving Ness Motley, it says, there would be no more money for RPWB to claim.

We are not persuaded that any of these arguments require that, as a matter of law, RPWB receive no part of the fee. RPWB continues to perform significant services on behalf of the class. The allocation does not pay anyone "twice." The simple fact that the case now involves three parties and the members of one party were formerly employed by another does not render their continued remuneration objectionable. The allocation instead simply adjusts the payment among the parties to reflect the efforts of each. We find no abuse of discretion in including RPWB.

## B.

We are more concerned, however, about the procedural question Ness Motley has raised. While we agree that RPWB is entitled to some portion of the fee, the district court has made it difficult for us to ascertain *why* RPWB has been given the *particular* amount that the court found appropriate. On this basis, Ness Motley urges us to vacate the allocation and remand for application of the *Barber* factors.

We fully recognize that the district court's close familiarity with this case extends to the issue of attorney fees. Indeed, the district court demonstrated such familiarity in its thorough application of the *Barber* factors to award attorney fees in the first place. For this reason, we cannot accept Ness Motley's invitation to impose *Barber* once more. Many of the *Barber* factors are inapplicable to questions of how a fee should be divided. Moreover, when, as here, *Barber* has clearly been meticulously applied and a significant portion of the resulting fee divided without objection, a rule requiring reapplication of *Barber* for every subsequent dispute would eviscerate the abuse of discretion standard and encourage vexatious application to the court.

In declining to require district courts to apply *Barber* in this context, we join other courts of appeals which have approved fee alloca-

tions among co-counsel for reasons that did not involve the *Barber* factors. *See, e.g.*, *In re FPI/Agretech Sec. Litig.*, 105 F.3d 469 (9th Cir. 1997); *Smiley v. Sincoff*, 958 F.2d 498 (2d Cir. 1992). Yet while these courts did not require anything like reapplication of the *Barber* factors, neither were they willing to accept an allocation without reasons spelled out by the district court. In *Smiley*, the Ninth Circuit was able to quote at length from the district court's allocation order. *Id.* at 502. *FPI/Agretech*, in turn, repeated that, in the allocation context, "[s]o long as the district court provides a 'concise but clear explanation' of its reasons, and those reasons are supported by the record, the reviewing court should accept its decision." *FPI/Agretech*, 105 F.3d at 473 (quoting *id.*).

Thus, the district court's familiarity with the case should have led to a greater precision and effort in explaining fee allocation decisions than the district court provided, especially considering the substantial sums involved and the somewhat speculative nature of the future services. Without precise reasons from the district court, appellate courts are in danger of being left without any real basis to review the decision. *See James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993). The district court stated that it found the allocation to be "reasonable," but declined to offer us much basis as to why this was so.

We nonetheless decline to remand. A charitable construction of comments from the bench — especially the recognition that the continuing administration of the fund is "one terrific job" — might link the eventual allocation to the fact that RPWB has substantial continuing obligations to the class. Those obligations were explained in great detail by counsel, both below and on appeal, and the court's comments hint that this explanation of the work was what influenced its decision. For instance, RPWB must guard millions of dollars of the class's fund that have been jeopardized by IRS action. It must protect part of the settlement itself — particularly the $25 million W.R. Grace rebate — within the confines of bankruptcy law. And even assuming away any threat to the class recovery itself, the process of distributing the common fund in a manner that satisfies the members of the class and the Settlement Advisory Committee will require energy, patience, and diplomacy.

We recognize that this circuit has not heretofore given specific instructions to district courts as to the nature of their discretion in this

precise context. Although we do not anticipate from district courts a full-blown *Barber* analysis when faced with issues of this sort, something more than threadbare justification is to be expected when a fee allocation involves large sums for future services. In short, district courts should explain in clear terms, even if only briefly, the reasons that an allocation this substantial is justified. We affirm this allocation, because the circumstances of this case have allowed us to surmise the basis for the exercise of the district court's discretion and because appellant has given us no real reason to believe that this discretion has been abused.

## III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.