**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 12-4623

———————

PAUL BRYAN; BONNIE BRYAN, Husband and Wife,
individually and as Parents and Natural Guardians on behalf
of their minor child, KB, and KB, KENNETH BRYAN

v.

ERIE COUNTY OFFICE OF CHILDREN AND YOUTH;
PAUL CANCILLA, individually and as an employee of Erie
County Office of Children and Youth; CARMEN E.
MERRITT, individually and as an employee of Erie County
Office of Children and Youth; RENIE SKALKO,
individually and as an employee of Erie County Office of
Children and Youth; CINDY BAXTER, individually and as
an employee of Erie County Office of Children and Youth;
CINDY LEWIS, individually and as an employee of Erie
County Office of Children and Youth; BRIGETTE
SULLIVAN, individually and as an employee of Erie County
Office of Children and Youth; JOHN PETULLA,
individually and as an employee of Erie County Office of
Children and Youth DPW Bureau of County Children and
Youth Programs

Cindy Baxter and Renie Skalko,

Appellants.

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania

(Case No. 1-03-cv-00259)

District Judge: Honorable Sean J. McLaughlin

_____

Argued: January 22, 2014

Before: FUENTES and FISHER, *Circuit Judges*, and
STARK, *District Judge*[*]

(Opinion Filed: May 20, 2014)

Pamela V. Collins
Walsh, Barnes Collins & Zumpella
707 Grant Street
Gulf Tower
Suite 1400
Pittsburgh, PA 15219

Barbara S. Magen
Sheila A. Haren [Argued]
Post & Schell, P.C.
Four Penn Center, 14th Floor
1600 John F. Kennedy Boulevard
Philadelphia, PA 19103
*Attorneys for Appellants*

Jay Paul Deratany [Argued]
221 North LaSalle, Suite 2200
Chicago, IL 60601

Jeffrey G. Mashni

_____

[*] The Honorable Leonard P. Stark, U.S. District Judge for the District of Delaware, sitting by designation.

9245 Maple Court
Morton Grove, IL 60053

Timothy D. McNair
821 State Street
Erie, PA  16501
*Attorneys for Appellees*

---

OPINION

FUENTES, Circuit Judge

In the midst of trial in the District Court, the parties agreed to a high-low settlement. Regardless of the verdict, the Bryan family was to receive at least $900,000. And regardless of the verdict, defendants Cindy Baxter and Renie Skalko were to pay no more than $2.7 million. So when the jury returned an $8.6 million verdict for the Bryans, Baxter and Skalko tendered $2.7 million and asked the Bryans to end the action. The Bryans refused. They asserted that Baxter and Skalko had breached the settlement agreement's confidentiality clause and thereby rendered the deal unenforceable. The parties brought their dispute to the District Court. But the District Court refused to resolve it, reasoning that the Court lacked the subject matter jurisdiction to decide whether to enforce the parties' terms or the jury's verdict.

The District Court erred. The parties presented their dispute to the District Court in order to bring the action to a close. The case had not been dismissed, nor had the jury's verdict been marked satisfied. Indeed, the action remained active and ongoing: the parties continued to litigate the effect of the jury's verdict up to and after taking this appeal. The

case should have remained with the District Court. Ancillary jurisdiction exists, for example, for post-judgment proceedings related to the enforcement of the judgment. Similarly, the District Court had jurisdiction to decide whether or not to enforce the parties' settlement agreement. A district court's jurisdiction does not terminate at the moment the jury's deliberations do.

The parties raise two other matters that we do not decide: (1) the merits of the Bryan family's allegation that Baxter and Skalko breached the settlement agreement and (2) Baxter and Skalko's argument that the District Court ought to have granted summary judgment in their favor. The District Court has not had an opportunity to consider the first issue and Baxter and Skalko have not addressed the second issue in light of the trial record. Accordingly, we remand for further proceedings before the District Court.

## I. Background of the Case

### A. *After the Bryans adopted J.O., he assaulted one of their children.*

During the summer of 2001, violence seized the Bryan family household. Their adopted son, J.O., repeatedly raped and molested his younger foster brother, K.B., in the room the boys shared together. After suffering through weeks of abuse, K.B. eventually told his parents, Paul and Bonnie Bryan. The Bryans then contacted the Erie County Office of Children and Youth ("ECOCY")—the agency that facilitated J.O.'s adoption—and had J.O. removed from their home.

The Bryans blamed ECOCY for K.B.'s ordeal. Among others employed at ECOCY, the Bryans focused on Renie Skalko and Cindy Baxter. Skalko served as one of J.O.'s

caseworkers. Baxter helped coordinate the Supportive Host Program, which aimed to transition institutionalized children, such as J.O., into foster homes. Through that program, Skalko and Baxter introduced J.O. to the Bryans and, eventually, helped facilitate the adoption. According to the Bryans, however, ECOCY and its employees concealed J.O.'s history during this process. ECOCY staff had reports of J.O.'s history of violent behavior and sexual misconduct, but did not disclose them to the Bryans.

**B.** *Proceedings in the District Court*

The Bryans sued ECOCY and seven of its employees pursuant to 42 U.S.C. § 1983 for a violation of their Fourteenth Amendment right to substantive due process. After an appeal to this Court for permission to amend the complaint, *see Bryan v. Erie Cnty. Office of Children & Youth Servs.*, 293 F. App'x 143 (3d Cir. 2008), the case proceeded on a state-created danger theory. That theory of liability permits a plaintiff to recover from state actors when "the state's own actions create the very danger that causes the plaintiff's injury." *See Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013). The Bryans alleged that ECOCY employees had placed KB into harm's way.

The District Court granted summary judgment in favor of many defendants. But the Court did not grant summary judgment for Baxter and Skalko on the merits of the Bryans' state-created danger claim or on Baxter and Skalko's qualified immunity defense. The Court identified contested questions of fact that deserved the jury's attention. In particular, the Court described the conflicting evidence about how much of J.O.'s history Skalko and Baxter knew, how much they told the Bryans, and whether, in light of that

5

knowledge, it was prudent to place J.O. into a foster home at all. (App'x 39-54, 69.)

### C. *During trial, the parties agreed to a high-low settlement.*

The parties tried their case to a jury. During the trial, the parties reached a "Stipulated to High/Low Agreement." This agreement constrained the parties' financial risks by stipulating a recovery range between the low of $900,000 and the high of $2.7 million. If the jury returned a verdict of $900,000 or less, the Bryans would receive $900,000. If the jury returned a verdict of $2.7 million or more, Skalko and Baxter would pay $2.7 million. If the jury returned a verdict between the high and the low, the parties had to accept that result. The agreement contemplated that payment would terminate the action: "Upon payment of any of the aforementioned amount by the Defendants, the verdict is deemed satisfied and any and all of Plaintiffs [sic] claims which are the subject of this lawsuit are dismissed forever and any and all appellate rights are hereby waived by all the Plaintiffs; and defendants." (App'x 188.)

In addition to the high-low terms, the agreement also contained confidentiality provisions. Paragraph 11 required the Bryans to "limit their public comments about ECOCY and the individual ECOCY Defendants" and to "say that the ECOCY and Defendants did the right thing by [the Bryans' son] and the parties are satisfied with the outcome." (App'x 188.) Paragraph 15 forbade the agreement from being disclosed to the jury. Paragraph 16 stipulated that "[t]his Agreement shall be CONFIDENTIAL subject to the duties, if any, of the ECOCY and/or its employees under the Pennsylvania Right to Know Act." (App'x 189.) And Paragraph 18 required the parties to "put [the] Agreement on

the record with the court to memorialize the same following entry of the verdict or court order disposing of the case." (App'x 189.)

The jury returned a verdict of $8,654,769 in favor of the Bryan family. After the jury announced its verdict, the Court and the parties conferenced about what to do next. Skalko and Baxter stated their intention "to make an oral motion to mold the verdict consistent with our agreement to $2.7 million." (App'x 742.) After discussing the matter, however, the parties' attorneys and the Court agreed to enter a stipulation of dismissal instead:

> [ECOCY's Attorney]: Why don't we do this. We have an agreement for a high/low that we previously signed, we're going to issue checks for $2.7 million to you. If you accept that, once we've issued the checks, we will file a stipulation of dismissal.
>
> [Bryans' Attorney]: That's fine.
>
> The Court: All right, we're done.

(App'x 743-44.) Shortly after the post-verdict conference, the District Court entered judgment in favor of the Bryans in the amount of $8,654,769.00.

Defendants' counsel then tendered $2.7 million to satisfy the agreement. The Bryans accepted the money "as only partial payment on the judgment." (App'x 190.) In a letter to Skalko and Baxter, the Bryans questioned whether Baxter and Skalko had "violated the terms of the high/low agreement which would render the agreement void or voidable." (App'x 190.) In particular, the Bryans alleged that Skalko and Baxter,

7

or their agents, had disclosed the terms of the agreement to county councilmen.

In response, Skalko and Baxter filed a "Motion to Satisfy Pursuant to F.R.C.P. 60" and a "Motion for Leave to File Rule 59 Motions Under Seal." (Doc. Nos. 361-62.) The Court directed the parties to brief the settlement dispute, and it denied Baxter and Skalko's motion to file the briefs under seal. The Court remarked: "I can't imagine for the life of me why it's appropriate to file anything under seal." (App'x 750.) While briefing the Rule 60 motion, Skalko and Baxter also filed a "Motion to Alter or Amend Judgment Under Rule 59(e), or in the Alternative, Motion for New Trial Under Rule 59(a)(1)(A)." (Doc. No. 363.) This motion identified numerous trial errors. It also purported to renew Skalko and Baxter's argument that they were immune from liability.

### D. *The District Court denied Skalko and Baxter's motion to enforce the high-low agreement.*

The District Court denied Skalko and Baxter's post-trial motions. The Court concluded that it lacked "jurisdiction to resolve the dispute relative to the enforceability of the agreement." (App'x 7.) The District Court observed that the high-low agreement "was solely the product of counsels' efforts with no involvement of the court," that "[i]t was not made part of the record prior to the case being closed," and that the Court "did not retain jurisdiction to resolve any dispute arising under it." (App'x 12.) The District Court noted that it denied the motions "without prejudice to reassert them, as may be appropriate, after a ruling by the state court on the issues germane to the alleged breach of the Agreement." (App'x 12.)

Skalko and Baxter filed a notice of appeal identifying two specific issues: the District Court's decision regarding jurisdiction and its denial of summary judgment. They did not appeal from the judgment in favor of the Bryans, or brief the merits of their Rule 59 motion to amend the judgment or to receive a new trial.

## II.  Jurisdiction

Defendants Skalko and Baxter's "Motion to Satisfy Pursuant to F.R.C.P. 60" seeks relief on the grounds that the judgment has been "satisfied, released or discharged." *See* Fed. R. Civ. P. 60(b)(5). The denial of a Rule 60(b) motion may or may not constitute a final order. *See Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 123 (3d Cir. 2004). The one in this case does: The District Court's decision, which followed the entry of judgment, ended the litigation on the merits. The District Court had nothing left to do but to execute the judgment it had entered on the record. *See Catlin v. United States*, 324 U.S. 229, 233 (1945). We therefore take jurisdiction under 28 U.S.C. § 1291.

## III. Analysis

### A. *The District Court's jurisdiction over the high-low agreement*[1]

The District Court properly exercised jurisdiction over the Bryans' lawsuit because it presented a federal question. *See* 28 U.S.C. § 1331. The presence of a federal question confers jurisdiction to a district court for an entire "civil action." *Id.* As part of its original jurisdiction over an action, a district court must consider the parties' post-trial motions concerning the trial, the verdict, and the judgment. *See* Fed. R. Civ. P. 50, 54, 59, 62. A district court's jurisdiction does not terminate at the moment the jury's deliberations do.

In certain circumstances, a federal court has jurisdiction to consider claims or to conduct proceedings beyond those raised by the original action itself. For example, when the parties present "other claims that are so related to claims in the action . . . that they form part of the same case or controversy," a federal court may exercise supplemental jurisdiction over them. 28 U.S.C. § 1367. Additionally, when matters "incident to the disposition of the primary matter" arise before a court, the doctrine of ancillary jurisdiction permits district courts to decide them. *United States v. Dunegan*, 251 F.3d 477, 478 (3d Cir. 2001). Thus, the limits

---

[1] This Court usually reviews denials of Rule 60 motions for abuse of discretion. *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008). But we review *de novo* whether the District Court possessed subject matter jurisdiction. *See Emerald Investors Trust v. Gaunt Parsippany Partners*, 492 F.3d 192, 197 (3d Cir. 2007).

of a court's original jurisdiction do not define the limits of the court's subject matter jurisdiction. When a federal court has original jurisdiction over an entire action, it has limited authority to decide certain related claims or conduct incidental proceedings. *See generally* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3523 (3d ed. 2013) (discussing supplemental, ancillary, and pendent jurisdiction, as well as their limits).

A federal court has jurisdiction to decide a Rule 60(b)(5) motion made by a party to a pending action. A Rule 60 motion does not "affect the judgment's finality or suspend its operation," *see* Rule 60(c)(2), so it does not form part of the original action. Indeed, Rule 60(b)(5) motions are used by a judgment-debtor to relieve itself of an already-final judgment that has been satisfied, released, or discharged. *See, e.g.*, *Sunderland v. City of Philadelphia*, 575 F.2d 1089, 1090 (3d Cir. 1978); *see also Zamani v. Carnes*, 491 F.3d 990, 995-96 (9th Cir. 2007); *Newhouse v. McCormick & Co., Inc.*, 157 F.3d 582, 584 (8th Cir. 1998). But that does not mean that a federal court lacks the jurisdiction to decide a Rule 60(b)(5) motion. To the contrary, a federal court may entertain garnishment, attachment, or other proceedings that "assist in the protection and enforcement of federal judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996); *see also* Fed. R. Civ. P. 64, 69, 70 (providing various post-judgment enforcement and execution procedures). We conclude that the same ancillary jurisdiction that supports post-judgment enforcement proceedings supports proceedings to seek relief from the judgment. The jurisdiction to enforce a judgment necessarily includes the jurisdiction to declare the judgment satisfied.

Accordingly, when Skalko and Baxter moved pursuant to Rule 60(b) to relieve themselves from the judgment, the District Court had jurisdiction to decide the motion. The nature of the defendants' argument did not counsel otherwise. To show why the Court should grant Rule 60(b) relief, Skalko and Baxter pointed to a high-low settlement agreement. And to show why the Court should deny Rule 60(b) relief, the Bryans argued that the agreement had been materially breached. True, these arguments formed a contract dispute distinct from the federal action. But this contract dispute stood between the Court and the resolution of the Rule 60 motion, and, by extension, the enforcement of the jury's verdict on the underlying claim. The Court, therefore, had ancillary jurisdiction to decide the dispute. *See Dunegan*, 251 F.3d at 478-79.

The District Court's contrary conclusion—that it lacked the subject matter jurisdiction to consider the enforceability of the high-low agreement—rested on *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994). There, the U.S. Supreme Court held that a district court does not inherently have subject matter jurisdiction over disputes concerning "the breach of an agreement that produced the dismissal of an earlier federal suit." *Id.* at 379. In so doing, "*Kokkonen* rejected any . . . resort to notions of 'inherent power' as surviving a dismissal order." *Shaffer v. GTE North, Inc.*, 284 F.3d 500, 504 (3d Cir. 2002) (citation omitted). *Kokkonen* did, however, chart a procedure by which the parties could maintain a federal court's jurisdiction after dismissal. To do so, the parties had to incorporate the terms of the settlement into the court's dismissal order. Thus, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Kokkonen*, 511 U.S. at 381; *see In re Phar-*

*Mor, Inc. Secs. Litig.*, 172 F.3d 270, 274 (3d Cir. 1999) (applying *Kokkonen* to conclude that district court lacked subject matter jurisdiction over motion to enforce settlement agreement because it did not incorporate the terms of the settlement into its dismissal order or otherwise indicate that it retained jurisdiction).

*Kokkonen* does not yet have any bearing on this dispute. In *Kokkonen*, the parties had dismissed their suit; in this case, the parties had not. As the U.S. Court of Appeals for the District of Columbia Circuit observed, "this distinction is critical." *T Street Dev., LLC v. Dereje & Dereje*, 586 F.3d 6, 10 (D.C. Cir. 2009). The absence of an ongoing matter within the district court's original jurisdiction left the district court in *Kokkonen* without any basis on which to predicate ancillary jurisdiction. But here, of course, the Bryans never dismissed the case, notwithstanding the high-low agreement. Having frustrated dismissal, and thus maintained the action, the Bryans cannot contend that the District Court lacked jurisdiction to decide whether to enforce the parties' agreement or the jury's verdict.

Finally, the procedural consequences of the District Court's decision underscore its error. By holding that it lacked jurisdiction over the parties' settlement agreement, the District Court made the outcome of a federal case contingent on a state proceeding. Were we to accept the Bryans' argument on appeal, the enforceable worth of the federal judgment would be determined in a state proceeding. That outcome poses an obstacle to efficiency as well as to federalism, and we think it must be undone.

**B.** *The District Court must decide the other issues in the first instance.*

We do not reach the additional issues the parties call to our attention. Those two issues—whether Skalko and Baxter breached the settlement agreement and whether Skalko and Baxter are entitled to qualified immunity—ought to be addressed first by the District Court.

As to the breach of contract issue, the District Court has yet to evaluate the merits of the dispute. This Court "ordinarily decline[s] to consider issues not decided by a district court, choosing instead to allow that court to consider them in the first instance." *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 401 (3d Cir. 2010). That policy suits this circumstance. The parties argue about whether Skalko and Baxter breached the agreement by disclosing its terms to third parties. Our record of those issues is incomplete and we are, therefore, unable to decide them.

As to qualified immunity, Skalko and Baxter purport to raise that issue before us by taking appeal from the District Court's denial of their summary judgment motion. But Skalko and Baxter concede that they raised the same immunity argument, in light of the trial record, in their Rule 59 motion for a new trial. As a general matter, "[o]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary judgment motion." *Ortiz v. Jordan*, 131 S. Ct. 884, 889 (2011). Skalko and Baxter have not briefed or argued the merits of the Rule 59 motion, however, so we need not decide it. Moreover, Skalko and Baxter only seek to challenge the District Court's qualified immunity ruling if the high-low agreement cannot be enforced. Otherwise, according to the agreement, "any and

all appellate rights [have been] waived by all the Plaintiffs; and defendants." (App'x 188.)

Because Baxter and Skalko have not briefed and argued the Rule 59 dispute, and because Skalko and Baxter may have waived any appeal of the issue at all, we will not review the qualified immunity defense now. Rather, we remand with instructions to consider the Rule 59 issues, if appropriate, following the Rule 60 decision.

## IV.   Conclusion

When the parties presented the District Court with a dispute about whether or not the judgment had been satisfied, the District Court had the subject matter jurisdiction to decide it. The District Court's decision to the contrary rested, incorrectly, on the theory that no settlement agreement fell within a district court's supplemental jurisdiction unless the court incorporated the terms of the agreement into an order. In ongoing litigation, district courts have the jurisdiction to decide whether the parties have settled the action or have satisfied the judgment.

Accordingly, we reverse the District Court's ruling with respect to its jurisdiction to consider the high-low agreement in the context of the Rule 60 motion. Because the District Court's evaluation of that motion and the other post-trial motions rested on its erroneous conclusion that it lacked jurisdiction to consider the existence and meaning of the high-low agreement, we vacate its order of dismissal. Finally, we remand to the District Court to consider the remaining post-trial motions in light of this opinion.