**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-4604

———————

WHITE AND WILLIAMS LLP; THE WHITE AND WILLIAMS
LLP PENSION PLAN AND TRUST; THE WHITE AND WILLIAMS
LLP 401(K) TAX DEFERMENT/RETIREMENT SAVINGS PLAN

v.

MICHELLE T. SEIDNER; MARY DIXON LEVY; THE UNITED
STATES OF AMERICA,

Michelle T. Seidner,

Appellant

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-13-cv-00110)
District Judge: Honorable L. Felipe Restrepo

———————

Submitted under Third Circuit LAR 34.1(a)
on April 6, 2016

Before:  FISHER, RENDELL, and BARRY, <u>Circuit Judges</u>

(Opinion filed:  May 16, 2016)

**RENDELL**, <u>Circuit Judge</u>:

Michelle T. Seidner appeals from the District Court's Order denying her Motion that sought to enforce her interpretation of a settlement agreement, or to otherwise set aside that agreement, and that sought sanctions. We will affirm the District Court's Order denying her Motion.

## I. Background

Irving Steven Levy ("Decedent") passed away on January 7, 2012. Decedent was a partner of the law firm of White and Williams LLP ("White and Williams") and, at the time of his death, was married to Mary Dixon Levy ("Levy"). Decedent was previously married to Michelle T. Seidner ("Seidner") until their divorce on February 10, 2009.[1] At the time of his death, Decedent owed federal income taxes in excess of $800,000.

Upon his death, Decedent was entitled to the proceeds of certain funds held or controlled by White and Williams (collectively, "the Funds"): (1) White and Williams profit distributions; (2) an unfunded pension calling for payments to Decedent's beneficiary amounting to $2,000 per month for a period of five years; (3) the White and Williams Pension Plan held by Wilmington Trust; and (4) a 401(k) account through the

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Decedent and Seidner finalized their divorce in 2009 in a bifurcated proceeding. As the division of property was not finalized at the time of the divorce, equitable distribution proceedings were ongoing when Decedent passed away.

White and Williams 401(k) Tax Deferment/Retirement Savings Plan held by Vanguard Fiduciary Trust Company ("Vanguard").

On January 8, 2013, White and Williams, along with the White and Williams Pension Plan, commenced an interpleader action in District Court, naming Seidner, Levy, and the United States as defendants.[2] The United States filed a counterclaim against White and Williams seeking to enforce a levy the IRS had served to collect Decedent's federal-income-tax liabilities and seeking the imposition of a penalty for White and William's failure to honor the levy.

Upon the conclusion of settlement discussions before Magistrate Judge Elizabeth T. Hey, the parties executed a Settlement Agreement dated January 8, 2014. The terms of the Settlement Agreement, in relevant part, stated:

> In full and final payment of *all personal tax liabilities owed by Decedent* to the United States, the United States will accept the sum of Seven Hundred Seventy Five Thousand Dollars ($775,000.00). To the extent the Funds exceed $775,000, the excess sums shall be distributed fifty percent (50%) to Seidner and fifty percent (50%) to Levy.

App. at 90a (emphasis added). The Settlement Agreement contemplated that the "personal tax liabilities owed by Decedent" might not be the only taxes imposed on the Funds—the Settlement Agreement states at Paragraph 4:

> [White and Williams] will issue 1099 Forms to the recipients of the Funds, and shall not be responsible for any tax liabilities of any kind related to the Funds, which responsibilities, including income and inheritance tax, shall lie with the recipients only. Seidner does not acknowledge that she has any tax liability for the distribution to be made to her pursuant this Settlement

---

[2] On August 26, 2013, an amended complaint was filed to add the White and Williams LLP 401(k) Tax Deferment/Retirement Savings Plan as a plaintiff in the action.

Agreement and reserves the right to contest any tax assessment made with respect to such distribution.

App. at 90a–91a. Finally, White and Williams agreed to pay the United States a sum of $5,000 from the firm's assets in addition to paying the $775,000 from Decedent's assets.

Following the execution of the Settlement Agreement, but with some delay, White and Williams assembled and distributed the $775,000 to the United States in four separate payments. Upon accepting the full payment, the United States released the federal tax liens, and dismissed both a foreclosure action on Seidner's residence and its counterclaim against White and Williams. After the United States received $775,000 for *Decedent's* unpaid income taxes, and after the payment of additional applicable federal taxes on the Funds that were withheld by Vanguard and Wilmington Trust, the balance that remained totaled $44,000, of which Seidner received 50%.

Upon receiving her 50% distribution, Seidner filed a motion asserting that the Settlement Agreement had not been complied with. She asserted that the parties all contemplated that, because the amount of the Funds at the time of Settlement was over a million dollars, she should have received approximately $114,500 rather than the $22,000 she actually received. Seidner acknowledged that the discrepancy was a result of federal tax withholdings by Vanguard and Wilmington Trust, but asserted that these withholdings were not contemplated by the parties at the time the agreement was signed. Seidner also contended that the discrepancy arose as a result of White and Williams's failure to comply with a Court order requiring the firm to place the Funds in an account

4

with the Court. In a hearing before the District Court, she stated that her attorney had refused to give her tax advice and had then withdrawn from the case.

Ultimately, the District Court denied Seidner's Motion, having determined that all parties substantially complied with the Settlement Agreement. Further, the District Court held that Seidner failed to demonstrate any reason to set aside the Settlement Agreement or to impose sanctions.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's final Order denying Appellant's Motion. The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, and 2410.[3] We apply plenary review to the District Court's construction of the Settlement Agreement—that is, to its findings as to the legal operation of the Settlement Agreement—but we review the District Court's interpretation of the Settlement Agreement and any other factual findings for clear error. *Cf. In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000) ("[C]ontract construction, that is, the legal operation of the contract, is a question of law mandating plenary review," while "contract interpretation is a question of fact, and review is according to the clearly erroneous standard."). Because the United States is a party to the Settlement Agreement,

---

[3] We disagree with the District Court's alternative finding that it lacked jurisdiction to grant Seidner's Motion. *See* App. at 5 n.6. District courts do not have inherent subject matter jurisdiction over disputes that concern "the breach of an agreement that produced the dismissal of an earlier federal suit," but because the District Court here had not dismissed the underlying action, it retained jurisdiction to enforce the Settlement Agreement. *See Bryan v. Erie Cty. Office of Children and Youth,* 752 F.3d 316, 322 (3d Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379 (1994)).

we will apply federal common law in interpreting it, although we detect no conflict between federal common law and the laws of Pennsylvania. *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("We have held that obligations to and rights of the United States under its contracts are governed exclusively by federal law.").

### III. Analysis

Seidner argues that she was entitled to at least $114,500 under the Settlement Agreement rather than the $22,000 that she actually received. She asserts that all parties shared a fundamental assumption that the amount remaining after the $775,000 paid to the United States would be approximately $229,000, of which she would be entitled to 50%. She urges that the District Court erred by declining to either (a) enforce the Settlement Agreement as she understood it—that is, to enforce the expectation that she would receive $114,500, or (b) to set aside the Settlement Agreement because it was based on a mistake of fact.

The District Court correctly rejected Seidner's arguments. "A basic principle of contract construction is that we must interpret and enforce unambiguous agreements according to their terms." *Shaver v. Siemens Corp.*, 670 F.3d 462, 496 (3d Cir. 2012). The District Court correctly determined that the Settlement Agreement was unambiguous in guaranteeing Seidner no sum certain but rather only 50% of whatever funds remained after the $775,000 payment to the United States for Decedent's unpaid income taxes. *See* App. at 5. Indeed, the Settlement Agreement contemplated at Paragraph 4 that additional taxes—beyond Decedent's delinquent income taxes—might apply to the Funds. *See* App. at 90a–91a ("[White and Williams] will issue 1099 Forms to the recipients of the Funds,

6

and shall not be responsible for any tax liabilities of any kind related to the Funds, which responsibilities, including income and inheritance tax, shall lie with the recipients only."). The District Court likewise correctly found that Seidner had presented no "persuasive reason" for setting aside the Settlement Agreement because of any mistake of fact. As the District Court so aptly put it:

> Seidner's primary complaint about the settlement concerns money. Despite the pension plan and 401(k) accounts increasing in value from the date the Settlement Agreement was signed to the date the Funds were disbursed, Seidner received a smaller cash payout than she was anticipating. The disparity between Seidner's unfounded expectation and the practical reality is the result of Vanguard and Wilmington Trust withholding 30% and 20% of the account balances, respectively, for tax purposes. Seidner's expectation that the Vanguard and Wilmington Trust disbursements would not be taxed runs contrary to both law and reason, and Seidner's reliance o[n] paragraph 4 of the Settlement Agreement is misplaced. An agreement between private parties cannot relieve a party to that agreement of tax liability, no matter how strongly that party believes they should not be taxed. The taxability of the Vanguard and Wilmington [T]rust distributions was never waived by the United States or otherwise made part of the Acknowledgement Letter. Hr'g Tr. at 18-20, 41-42. That Seidner failed to comprehend the tax implications of the settlement or secure competent legal advice to help her understand such implications is not a sufficient reason to set aside the settlement. If Seidner needed a sum certain to be satisfied with the settlement in this matter, she should have protected herself by including that sum certain as a condition of the Settlement Agreement. Instead, she bargained for and received exactly 50% of the Funds "to the extent the Funds exceed[ed] $775,000."

App. at 5-6 n.8. We agree with the District Court's reasoning and conclusions. *Cf.* Restatement (Second) of Contracts § 154 ("A party bears the risk of a mistake when (a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is

7

allocated to him by the court on the ground that it is reasonable in the circumstances to do so.").

Finally, we see no error in the District Court's determination that the Appellees substantially complied with their obligations under the Settlement Agreement and that Seidner failed to demonstrate that either White and Williams or the United States engaged in any sanctionable conduct.

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's Order denying Seidner's Motion to Enforce the Settlement.

8