**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3012
_____

IN RE: COMMUNITY BANK OF NORTHERN VIRGINIA
MORTGAGE LENDING PRACTICES LITIGATION

*Specter Specter Evans & Manogue,
                                                        Appellant

*(Pursuant to Fed. R. App. P. 12(a)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-03-cv-00425)
District Judge: Honorable Arthur J. Schwab
_____

Argued October 2, 2018
_____

Before: SHWARTZ, ROTH, and FISHER, Circuit Judges.

(Filed: December 20, 2018)
_____

OPINION OF THE COURT
_____

Stanley M. Stein     [ARGUED]
445 Fort Pitt Boulevard
Suite 150
Pittsburgh, PA 15219

*Counsel for Appellant*

Gary F. Lynch          [ARGUED]
Jamisen A. Etzel
Carlson Lynch Sweet & Kilpela
1133 Penn Avenue
5th Floor, Suite 210
Pittsburgh, PA 15222

*Counsel for Appellee*

SHWARTZ, Circuit Judge.

R. Bruce Carlson was co-lead counsel representing the plaintiffs in In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation, MDL No. 1674 ("In re Community Bank" or "CBNV"). He began his work on the case while an associate with Specter Specter Evans & Manogue ("SSEM" or "the firm"), and continued to work on the case after he left the firm. He entered into agreements with SSEM regarding how fees recovered in CBNV, and other cases, would be allocated between himself and SSEM.

After the final order approving the class settlement and fee award was entered in CBNV, SSEM filed a state court breach of contract action against Carlson, alleging that he owed the firm a portion of the fees he received in CBNV. Carlson

moved the District Court to stay the state case and confirm his fee award. The Court exercised ancillary jurisdiction over the state contract dispute, stayed the state case, and granted Carlson's motion, concluding that SSEM was not entitled to any portion of the fee Carlson had received because a condition precedent for triggering any payment to SSEM had not occurred.

The District Court erred in exercising ancillary jurisdiction over the state contract dispute because it did not retain jurisdiction over disputes arising from the allocation of fees among counsel, the state law breach of contract claim is factually distinct from the federal claims the CBNV plaintiffs made against the bank, exercising ancillary jurisdiction was not needed for the Court to resolve matters properly before it, and the Court had no control over the funds SSEM seeks. Because the Court improperly exercised ancillary jurisdiction over this dispute, we will reverse the order exercising ancillary jurisdiction, lift the stay of the state court action, vacate the order confirming Carlson's fees, and leave to the state court the resolution of this state law contract dispute.

I

SSEM hired Carlson as an associate in 2000 for a salary and various benefits, as well as a percentage of fees earned by the firm for class actions he originated. Within weeks of his hiring, Carlson identified individuals who had incurred losses allegedly arising from their dealings with lenders who paid illegal kick-backs to undisclosed third parties. Based upon his investigation, Carlson filed several lawsuits that eventually became part of the CBNV multidistrict litigation, alleging violations of the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2601 et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., as amended by the Home Ownership and Equity Protection Act ("HOEPA"), id. at § 1639 et seq.; and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. In 2003, the District Court granted a joint motion for class certification and approval of a class settlement, which would have paid $33 million to the class and $8.1 million to class counsel. Objectors and proposed intervenors appealed the order.

In February 2004, while the appeal of the class certification and class settlement order was pending, Carlson and SSEM entered into an agreement concerning how they would split fees for CBNV. The agreement noted that the District Court had approved a class counsel fee award of $8.1 million that was on appeal, and that, "assuming that the district court's Order is affirmed . . . , Carlson shall be entitled to 20% of the first $2,000,000 and 35% of all amounts in excess of $2,000,000." App. 289. Two months later, Carlson decided to leave the firm, and in June 2004, he and SSEM entered into a Separation Agreement. That agreement states:

> All defense counsel, all plaintiff's counsel and all courts shall be advised that SSEM and CARLSON have a joint interest in a portion of the fee in the cases set forth herein [including CBNV], and that, with respect to that interest, CARLSON and SSEM (as soon as practicable but in no event later than June 1, 2004) shall prepare and dispatch a joint letter to defense counsel directing that their respective fee interests be wired to separate escrow accounts, consistent with the fee sharing arrangements set

4

forth in this Agreement. CARLSON expressly represents that he has consulted with defense counsel in each of these cases and they are agreeable to this arrangement. CARLSON and SSEM will also file a notice under seal with each court wherein a case is pending that is subject to this Agreement that confirms the fee arrangement between SSEM and CARLSON for that case.

App. 258-59 ¶ 13. The Separation Agreement acknowledges previously negotiated fee-splitting agreements and, with respect to CBNV states, in relevant part:

SSEM and/or CARLSON are entitled to fifty-percent (50%) of the $8.1 million fee approved in this case (after payment to objectors). The parties previously agreed that CARLSON is entitled to twenty percent (20%) of the first $2 million payable to SSEM and/or CARLSON and thirty-five percent (35%) of all amounts in excess of $2 million. This agreement shall continue intact, irrespective of CARLSON'S ongoing responsibilities in the matter and any time that CARLSON may devote to the appeal of the settlement's approval and thereafter.

App. 259-60 ¶ 16. After Carlson left SSEM, we vacated the 2003 class certification and class settlement order and remanded the case. In re Cmty. Bank, 418 F.3d 277, 301-02 (3d Cir. 2005). Carlson notified SSEM of this ruling and sought to change the Separation Agreement. The record is silent as to whether SSEM responded to this notification.

5

In 2008, the District Court granted a second joint motion for class certification and approval of a class settlement. In re Cmty. Bank, No. 03-0425, 2008 WL 239650, at *10-11 (W.D. Pa. Jan. 25, 2008). While the second order was on appeal, Carlson suggested that he and SSEM enter mediation to renegotiate their fee-splitting agreement. There is no evidence that SSEM responded to this suggestion. In the meantime, we vacated the second class certification and class settlement order and again remanded. In re Cmty. Bank, 622 F.3d 275, 279 (3d Cir. 2010), as amended (Oct. 20, 2010). Carlson's partner Gary Lynch informed SSEM that the second order had been vacated and again sought to revise the fee-splitting agreement. Nothing in the record indicates the agreement was revised.

After the second remand, plaintiffs filed an amended complaint, the parties engaged in discovery and motion practice, and the District Court entered an order granting a contested motion for class certification, In re Cmty. Bank, Nos. 03cv0425 and 05cv0688, 2013 WL 3972458, at *9 (W.D. Pa. July 31, 2013), which we affirmed, In re Cmty. Bank, 795 F.3d 380, 410 (3d Cir. 2015). Thereafter, the parties reached a class settlement, which the District Court approved. The Court permitted the parties to use a three-arbitrator panel to conduct a "high-low" arbitration to fix the actual settlement amount and the fee award. The Court's final order retained jurisdiction over any dispute or cause of action "related to the administration and/or enforcement of the Agreement, Settlement, [or] Order," App. 204, but it excised the section of the order concerning attorneys' fees and expenses. The Court also denied without prejudice the pending motion for attorney

6

fees "since jurisdiction lies with the Arbitration Panel." App. 290.

In March 2017, the panel determined the value of the settlement, establishing a $24 million common fund from which it awarded $8.4 million in counsel fees. The arbitrators did not allocate the $8.4 million among plaintiffs' counsel. Instead, the panel stated that class counsel

> have irrevocably agreed on an allocation of attorneys' fees and reimbursable expenses among themselves . . . . Such attorneys' fees are . . . to be allocated among the various Class Counsel as they have previously agreed. No fees, costs or expenses are approved or authorized except as described herein.

App. 209-10. The attorneys' fees were distributed to class counsel, including Carlson.

In June 2017, SSEM sued Carlson in the Court of Common Pleas of Allegheny County, Pennsylvania, arguing that Carlson breached their 2004 Separation Agreement and seeking $1.9 million. Carlson moved the District Court for orders staying the state court action and confirming his fee award. The Court exercised ancillary jurisdiction, stayed the state court action, and granted Carlson's motion to confirm his fee award. In re Cmty. Bank, No. 03CV0425, 2017 WL 3621509, at *8 (W.D. Pa. Aug. 23, 2017). With respect to its exercise of ancillary jurisdiction, the Court explained

> the utter lack of attendance on the part of any representative of SSEM, the Court's own

7

experience with the Parties' counsel during the complex negotiations which ultimately led to the Settlement Agreement (ECF 759-1) and the Court-approved Notice (ECF 761), and the statements contained in paragraph 5 of the decision . . . of the Arbitration Panel (ECF 778), that the payment of attorneys' fees were (and are) inextricably intertwined with the final resolution of this 14-year old lawsuit. This Court, the Parties, and their counsel have a vital interest in the arrangements insofar as the payment of attorneys' fees is concerned given not only the lengthy history of this case, but to preserve the integrity of the various legal processes (mediation, court intervention/involvement, and final and binding arbitration) that brought about a hard-fought and creative resolution to this matter.

Id. at *7; see also id. at *3-4. With respect to confirming Carlson's fee award, the Court determined that Carlson was entitled to the full amount of fees he received from the CBNV litigation because the agreements between SSEM and Carlson contained an unfulfilled condition precedent that excused Carlson from performance. Id. at *7-8. SSEM appeals.

II

8

A

The threshold issue for us to resolve is whether the District Court properly exercised ancillary jurisdiction over the state contract dispute.[1]  We have jurisdiction to review the Court's exercise of jurisdiction pursuant to 28 U.S.C. § 1291 and review that decision de novo.  See Bryan v. Erie Cty. Office of Children & Youth, 752 F.3d 316, 321 n.1 (3d Cir. 2014).

B

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by [the United States] Constitution and [federal] statute[s.]"  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The burden of demonstrating that a case falls within the jurisdiction of the federal court rests upon the party asserting jurisdiction.  Id.  The most common grounds for a federal court's jurisdiction are federal question jurisdiction and diversity jurisdiction.  28 U.S.C. §§ 1331, 1332.  Courts may also assert ancillary jurisdiction "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent[2] and (2) to enable a court to function

---

[1] The District Court lacked original jurisdiction over the state law breach of contract claim because it involves neither federal question nor diversity jurisdiction.

[2] Congress codified this principle under the heading of "supplemental jurisdiction" in 28 U.S.C. § 1367.  Except for exclusions not applicable here, § 1367(a) provides

successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."[3]  Kokkonen, 511 U.S. at 379-80 (footnote inserted) (citations omitted).

C

Neither of these purposes is advanced through the exercise of ancillary jurisdiction in this case.  As a preliminary matter, contrary to Carlson's assertion, the District Court did not retain jurisdiction over disputes arising from the allocation of fees among counsel.  The allocation of the fee award to class counsel occurred pursuant to a confidential agreement among counsel and the allocation was not the subject of a ruling by the arbitrators or the Court.[4]  More significantly, the Court struck

> the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  The exercise of supplemental jurisdiction is discretionary.  Id. at § 1367(c).

[3] For instance, the exercise of ancillary jurisdiction is appropriate where, without exercising such jurisdiction, a pending federal case would be contingent on a state proceeding.  See Bryan, 752 F.3d at 322 (reversing court's ruling that it did not have jurisdiction to consider dispute regarding enforceability of high-low settlement agreement).

[4] Neither the District Court nor the Arbitration Panel was involved in the allocation of fees among plaintiffs' counsel.  Thus, the cases Carlson cites for his argument that a

the paragraphs of the final order approving the class action pertaining to fees. App. 200-04, 290. In its final approval order with the stricken language, the Court stated

> this Court expressly retains jurisdiction as to all matters relating to the administration and enforcement of the Agreement and Settlement and of this Order, and for any other necessary purpose as permitted by law, including, without limitation
>
> . . . .
>
> entering such additional Orders as may be necessary or appropriate to protect or effectuate the Court's Orders and/or to ensure the fair and orderly administration of the settlement and the distribution of the Arbitration Panel's awards[.]

App. 204. By striking the fee language, it excluded fee issues from matters over which it retained jurisdiction.[5]

---

court may "reject a fee allocation agreement where it finds that the agreement rewards an attorney in disproportion to the benefits that attorney conferred upon the class—even if the allocation in fact has no impact on the class," are inapposite. See Appellee's Br. at 31-32 (quoting In re FPI/Agretech Sec. Litig., 105 F.3d 469, 473 (9th Cir. 1997); citing Jones v. Amalgamated Warbasse Houses, Inc., 721 F.2d 881, 884 (2d Cir. 1983); then citing In re MRRM, P.A., 404 F.3d 863, 867-69 (4th Cir. 2005)).

[5] Moreover, once the class action has been settled and dismissed, the mere fact of that original federal jurisdiction is not "the basis for federal-court jurisdiction over the contract dispute." Kokkonen, 511 U.S. at 381.

11

While the District Court's decision not to retain jurisdiction over attorney fee disputes may be sufficient for it to decline to exercise ancillary jurisdiction here, there are additional reasons why exercising ancillary jurisdiction was an error. First, SSEM's breach of contract claim is not factually interdependent with the federal claims asserted in CBNV.[6] CBNV involved federal statutory claims arising from allegedly deceptive lending practices, whereas the state case involved a state law contract dispute between an attorney and his former

---

[6] See Schwab v. H.J. Heinz Co., Civ. No. 11-6463 (KM), 2015 WL 13236643, at *4 (D.N.J. Nov. 6, 2015) ("This is a dispute between attorneys only . . . . Nor is [the attorney] trying to either vacate or enforce the settlement. Rather, [the attorney] as a third party is asserting a claim against a fee that presumably is in the hands of another attorney . . . . Such a dispute between non-parties to the underlying action bears a tenuous relation to the underlying action. Analysis of the merits of such a claim would involve contract law and the law of attorney and client; neither the fact-finding nor the legal analysis would have much to do with the merits of the underlying products liability action. In short, this is a poor candidate for the court's discretionary exercise of ancillary jurisdiction. This is a state-law dispute between attorneys that should be pursued, if anywhere, in state court." (citing Barreto v. Reed, No. CIV. A. 93–2811, 1994 WL 396425, at *1 (E.D. Pa. July 28, 1994) (declining to exercise ancillary jurisdiction over a dispute between attorneys where dispute did not arise from transaction at issue in the underlying action, court would have to engage in new fact-finding, and state proceedings would determine the attorney's respective rights and obligations))).

12

firm as to how they would split a fee award. The fee-splitting case is not the type of dispute one would expect to be tried with the federal deceptive lending claims in CBNV. See City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164-65 (1997) (explaining that "the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."'" (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966))).

Second, exercising jurisdiction over the breach of contract claim was not necessary for the District Court to "manage its proceedings, vindicate its authority, [or] effectuate its decrees." Kokkonen, 511 U.S. at 380. Courts have exercised ancillary jurisdiction over fee disputes between clients and former counsel where resolution of the fee dispute enables the court to resolve the underlying action over which the court has jurisdiction, see Novinger v. E.I. DuPont de Nemours & Co., Inc., 809 F.2d 212, 217 (3d Cir. 1987), but that is not the situation here. In this case, the underlying action is settled and we are asked to decide "whether ancillary jurisdiction [nevertheless] extends to the resolution of a post settlement fee dispute between two attorneys, only one of whom was attorney of record," a question we explicitly declined to address in Novinger. Id. at 218 n.4. Today, we resolve that open question and join the Court of Appeals for the Fourth Circuit in holding that a federal court should decline to exercise ancillary jurisdiction over a fee dispute between two attorneys where the court has no control over the funds and the fee-splitting dispute has no impact on the timing or

13

substance of the litigants' relief in the underlying case over which the federal court has jurisdiction. In reaching the same conclusion, the court in Taylor v. Kelsey, 666 F.2d 53, 54 (4th Cir. 1981), observed

> [t]he fee dispute did not arise as a matter of necessity from anything which occurred in the proceedings of the [underlying] litigation, nor did the district court have control over the fee in the sense that the court was required to establish and distribute a fee. Instead, the controversy arose purely from a private contract dispute between two Virginia residents. Under these circumstances, we see no basis for ancillary jurisdiction.

Id. That is the exact situation presented here. SSEM and Carlson's dispute is between two Pennsylvania residents and did not arise as a result of any rulings in CBNV. While their fight became ripe when Carlson allegedly failed to share with SSEM the fees he received from the class settlement, any obligation he may have had to do so is based upon a private agreement between him and his former firm. Thus, the disputed issue "did not arise as a matter of necessity from anything" that occurred in the CBNV proceedings. Id. Moreover, the resolution of the fee-splitting case will have no impact on the class or the fee award.[7]

---

[7] Carlson's reliance on a district court's role as a fiduciary for a class does not alter this conclusion. Here, the District Court satisfied its duty to thoroughly review fee applications. In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 728, 730 (3d Cir. 2001) (citation omitted). It approved a

14

Courts exercising ancillary jurisdiction over fee disputes between attorneys have done so where the district court had control over the disputed funds. Law Offices of David Efron v. Matthews & Fullmer Law Firm, 782 F.3d 46, 52 (1st Cir. 2015) (exercising ancillary jurisdiction over fee dispute between attorneys where "court's control over . . . the partially executed judgment . . . conferred authority to determine the proper recipients of those funds in order to conclude the court's responsibilities in the underlying action"); see Baer v. First Options of Chi., Inc., 72 F.3d 1294, 1300-01 (7th Cir. 1995) (exercising jurisdiction where court had

---

settlement that ensured that the class was compensated at one of two amounts to be selected by an arbitration panel, and there is no assertion that the $24 million award the arbitrators selected was not in the class' interest. In addition, there has been no challenge to the reasonableness of the $8.4 million fee award. Resolution of the state court case will not impact the amount of the common fund awarded to the class or the amount of attorney's fees payable from that fund to class counsel. Cf. Grimes v. Chrysler Motors Corp., 565 F.2d 841, 844 (2d Cir. 1977) (affirming the exercise of ancillary jurisdiction in a fee dispute between the attorney of record and the trial counsel, both from New York, in a personal injury action because "distribution of the Grimes settlement funds and its determination of appropriate disbursements was clearly ancillary to its approval of the settlement in the case"). Put differently, the class members' recovery was fixed and it would not be reduced by how Carlson may split the fee award he received. In short, those to whom the Court owed a fiduciary duty are in no way impacted by this private fee-splitting dispute.

15

retained it and held disputed funds in escrow); <u>Grimes v. Chrysler Motors Corp.</u>, 565 F.2d 841, 844 (2d Cir. 1977) (exercising jurisdiction where court had control of funds).[8] Here, as in <u>Taylor</u>, 666 F.2d at 54, the funds have been distributed and thus the District Court had no control over them when Carlson asked the Court to exercise ancillary jurisdiction over SSEM's state court action and confirm his fee award.

The District Court was understandably troubled by the fact that SSEM provided no notice of its interest in the fee award despite the fact both the firm and Carlson were bound by their Separation Agreement to do so. It is also understandable that the Court had an interest in bringing to conclusion any matters that could have even tangentially touched upon CBNV, a case over which it presided for fourteen years. <u>In re Cmty. Bank</u>, 2017 WL 3621509, at *7; <u>see also</u> <u>id.</u> at *3-4 (discussing <u>Novinger</u>, 809 F.2d at 214). Nonetheless, the Court did not retain jurisdiction over disputes regarding the allocation of fees among counsel, SSEM's breach of contract claim is not factually interdependent with the federal deceptive lending claims asserted in CBNV, exercising jurisdiction was not necessary for the Court to manage its affairs, and the Court had no control over the funds SSEM seeks.[9] Accordingly, the Court erred in exercising ancillary jurisdiction.

---

[8] <u>See also</u> <u>Edwards v. Doe</u>, 331 F. App'x. 563, 570 (10th Cir. 2009) (exercising jurisdiction even though court did not retain it or have control over the disputed funds where the dispute involved an attorney's lien that "create[d] a direct connection to the underlying litigation").

[9] In addition, no federal interest is implicated by the fee dispute. That the federal claims against the bank in CBNV permit an award of attorney's fees, 12 U.S.C. § 2607(d)(5)

16

Because the District Court lacked jurisdiction, it wrongly stayed the state proceedings and adjudicated the contract dispute. We will therefore lift the stay, vacate the order confirming the fee award, and leave for the state court to decide the merits of the contract dispute.

## III

For the foregoing reasons, we will reverse the order exercising ancillary jurisdiction, lift the stay, and vacate the order confirming Carlson's fees.

---

(RESPA fee provision); 15 U.S.C. 1640(a)(3) (TILA and HOEPA fee provision); 18 U.S.C. 1964(c) (RICO fee provision), and many class settlements under Federal Rule of Civil Procedure 23 include fee awards that are subject to court approval, does not prevent, nor is any federal policy interest implicated by, resolution of this fee dispute in state court.