**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2715
_____

HONG ZHUANG,

Appellant

v.

EMD PERFORMANCE MATERIALS CORP.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:18-cv-001432)
District Judge: Honorable Christine P. O'Hearn

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 16, 2024

Before: BIBAS, PORTER, and MONTGOMERY-REEVES, <u>Circuit Judges</u>

(Opinion filed: March 5, 2024)

_____

———————
OPINION[*]
———————

PER CURIAM

Pro se appellant Hong Zhuang appeals from the District Court's order denying her motion to reopen and enforce a settlement agreement and granting appellee EMD Performance Materials Corp.'s ("EMD PM") motion to compel arbitration. For the following reasons, we will affirm the District Court's decision.

I.

In 2018, Zhuang initiated an action in the District Court against her former employer, EMD PM. In November 2022, the case proceeded to a jury trial, with Zhuang appearing pro se. Prior to trial, the District Court held several pretrial conferences where the District Judge repeatedly confirmed with Zhuang that she wanted to proceed pro se.

After five days of trial, shortly before closing statements, the parties met for a lengthy settlement conference with a Magistrate Judge. The meeting resulted in a written term sheet. Prior to proceeding, Zhuang asked to speak to her standby counsel about one provision of the agreement. After she had an opportunity to do so, the parties added two new provisions to their agreement. The updated agreement was emailed to Zhuang at the time, and the parties reviewed the terms on the record before the District Court.

At issue in this appeal is a single provision of the confidential agreement — one of

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

the two new provisions added to the initial term sheet — which stated: "Any disputes arising under this agreement or relating in any way to this agreement will be submitted to binding confidential arbitration using the AAA Arbitration service."[1] See Appellant's App. at A61, A200. Zhuang did not discuss the arbitration clause with her standby counsel before agreeing to it, although she had the opportunity to do so. The District Court extensively questioned Zhuang to make sure she understood the agreement's terms as a pro se litigant, confirming that she was agreeing to them voluntarily, with sufficient prior notice, and with an opportunity to consult with standby counsel if she so chose. The District Court also confirmed that Zhuang understood that she was pursuing settlement to resolve the case that day, rather than proceeding with the jury trial that was already underway and nearly complete. The District Court repeated several times that Zhuang's claims had been resolved by the settlement agreement.

After the parties agreed to the terms on the record, the District Court dismissed the jury and entered an order administratively terminating the case pending confirmation of the settlement. The parties began working to finalize the settlement agreement.[2]

Three weeks later, Zhuang filed a motion to reopen the case and enforce the settlement agreement. She argued that EMD PM breached a provision of the agreement. EMD PM responded by filing a motion to compel arbitration, based on the arbitration

---

[1] The other specific terms of the parties' settlement agreement are confidential and not relevant to the disposition of this appeal, and thus are not referenced in this opinion.
[2] Although the parties intended for the term sheet to resolve the matter, they also agreed that additional terms would be set out in a to-be-completed finalized settlement agreement.

3

clause.  The District Court held a hearing on the parties' motions.  At the hearing, Zhuang testified that she had initially requested that the Magistrate Judge retain jurisdiction over any disputes that arose between the parties on one provision of the agreement — the one she had discussed with standby counsel — and that EMD PM suggested adding an arbitration clause to the agreement instead, as counsel for EMD PM did not believe the Magistrate Judge could continue to preside over the matter.  Zhuang testified that she had agreed to the arbitration clause but that it was her understanding that the clause applied to only one provision of the agreement, not the entire agreement.

At the end of the hearing, the District Court denied Zhuang's motion and granted EMD PM's.[3]  It subsequently entered an order reinstating its administrative termination of the case, noting that the case would be dismissed within 45 days either by stipulation of the parties or by court order.  In September 2023, the District Court entered an order dismissing the case with prejudice, referencing its prior order.  Zhuang timely appealed.

## II.

We have jurisdiction pursuant to 9 U.S.C. § 16(a)(3).  Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 89 (2000) ("[W]here . . . the District Court has ordered the parties to proceed to arbitration, and dismissed all the claims before it, that decision is 'final' within the meaning of § 16(a)(3), and therefore appealable.").  "We exercise plenary review over questions of law concerning the applicability and scope of arbitration

---

[3] Zhuang filed a notice of appeal seeking to challenge the decision after the hearing; we dismissed the appeal for lack of appellate jurisdiction because no final order had been entered at the time.  See Zhuang v. EMD Performance Materials Corp., No. 23-1401, 2023 WL 4578793, at *2 (3d Cir. July 18, 2023) (per curiam).

4

agreements" and review the District Court's factual findings for clear error. <u>Nino v. Jewelry Exch., Inc.</u>, 609 F.3d 191, 200 (3d Cir. 2010) (citation omitted).

III.

After careful review of the record, the hearing transcripts, and the parties' filings, we conclude that the District Court did not err in granting EMD PM's motion to compel arbitration and denying Zhuang's motion to reopen.[4] "[T]o decide whether a party may be compelled to arbitrate a dispute with another party, we must determine (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." <u>Century Indem. Co. v. Certain Underwriters at Lloyd's, London</u>, 584 F.3d 513, 527 (3d Cir. 2009). Here, the parties do not dispute the existence of an arbitration clause in their settlement agreement, but rather the scope of the clause.

Zhuang has argued that she agreed to the arbitration clause because she believed it would apply solely to the sentence immediately preceding the arbitration clause, while EMD PM maintains that the arbitration clause applies to all disputes relating to the settlement agreement. Zhuang contends that her understanding of the arbitration clause and the context surrounding its addition to the settlement agreement controls, maintaining that she did not know that she was giving up her right to proceed with a jury trial in the case. However, the record supports the District Court's decision to compel arbitration.

---

[4] Because the District Court did not dismiss the case upon the parties' agreement to the term sheet, the District Court had jurisdiction to enforce the agreement. <u>See</u> <u>Bryan v. Erie Cnty. Off. of Child. & Youth</u>, 752 F.3d 316, 322 (3d Cir. 2014).

Under the Federal Arbitration Act, the plain language of a contract controls unless "an arbitration agreement is ambiguous about whether it covers the dispute at hand," in which case a presumption of arbitrability applies. White v. Sunoco, Inc., 870 F.3d 257, 262 (3d Cir. 2017) (citation omitted). Here, as the District Court observed, the plain language of the settlement agreement contains a broad arbitration clause, providing that "*[a]ny disputes arising under* this agreement or *relating in any way* to this agreement will be submitted to binding confidential arbitration." See Appellant's App. at A200 (emphasis added). This broad provision is not ambiguous; it does not suggest that the "agreement" refers to any of the individual provisions contained in the settlement agreement rather than the entire agreement itself. See In re Remicade (Direct Purchaser) Antitrust Litig., 938 F.3d 515, 522-23 (3d Cir. 2019) (applying state law to determine the scope of an arbitration clause, "as it would any other contractual provision," and observing that "New Jersey [c]ourts have generally read the terms 'arising out of' or 'relating to' [in] a contract as indicative of an 'extremely broad' agreement to arbitrate any dispute relating in any way to the contract") (alterations in original) (internal quotation marks and citation omitted). Additionally, no other provision of the settlement agreement references the arbitration clause or suggests that its meaning is limited to a specific portion of the agreement. See Schor v. FMS Fin. Corp., 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002) ("A party that uses unambiguous terms in a contract cannot be relieved from the language simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to the words' plain meaning.").

Even if there were some ambiguity in the language of the arbitration clause, the

record shows that the terms of the settlement agreement were reviewed on the record before the District Court, after which Zhuang was thoroughly questioned about her understanding of the agreement and her assent to it. She did not seek to clarify the scope of the arbitration clause, and she confirmed that she wanted to settle because she wanted to resolve the matter that day. The District Court made clear that instead of proceeding with trial the parties were coming to an agreement that would end the case. Defense counsel also explained to Zhuang how arbitration would work and how an arbitrator would be selected.[5]

Further, Zhuang consulted with standby counsel about a different term in the contract that she was unsure about. The settlement negotiations were briefly on hold while she attempted to reach her standby counsel on the day the parties met with the Magistrate

---

[5] Zhuang relies on the New Jersey Supreme Court's decision in Atalese v. U.S. Legal Servs. Grp., L.P., 99 A.3d 306, 315-16 (N.J. 2014), to argue that the arbitration clause itself must have explained that she was "giving up her right to bring her claims in court or have a jury resolve the dispute." Although "the New Jersey Supreme Court has not definitively resolved the scope of the rule, it has applied it thus far only in the context of employment and consumer contracts." Remicade, 938 F.3d at 525. New Jersey courts have emphasized that the rule is inapplicable "when considering individually-negotiated contracts between sophisticated parties – often represented by counsel at the formation stage – possessing relatively similar bargaining power." Cnty. of Passaic v. Horizon Healthcare Servs., Inc., 289 A.3d 495, 498 (N.J. Super. Ct., App. Div. 2023). This case does not concern an employer or consumer contract, but rather an individually negotiated settlement agreement. Zhuang is a highly educated and capable pro se litigant who had access to counsel throughout the settlement negotiation process if she had wanted further advice on the possible ramifications of the arbitration clause; Zhuang did seek her standby counsel's advice on another term of the agreement. Zhuang also first raised the idea of having the Magistrate Judge resolve future disputes, which led the parties to add the arbitration clause to their agreement. And, as explained above, the context surrounding the parties' agreement made clear that the parties were agreeing to settle in lieu of continuing with District Court proceedings. Accordingly, the rule of Atalese is inapplicable here.

Judge. The parties added the arbitration clause after Zhuang spoke with her standby counsel about a different provision, but she chose not to follow back up with him to ask for further advice or clarity about breadth of the arbitration clause. The District Court observed that Zhuang capably represented herself during trial and settlement negotiations, and that the arbitration clause was added at her request.

Thus, the plain language of the parties' contract, the parties' answers to questions over the course of multiple hearings, the context surrounding the addition of the arbitration clause, and Zhuang's access to counsel for consultation during settlement negotiations all support the District Court's decision. The record also supports the District Court's finding that Zhuang understood that she was entering into a settlement agreement as an alternative to proceeding with trial; she could have chosen to continue with closing statements and get a verdict.

Finally, Zhuang contends that the District Judge was biased against pro se litigants and against her specifically, which affected the ruling. She requests remand and reassignment to another judge. We acknowledge that the District Judge expressed frustration at having to bring the parties back so quickly after just reaching what seemed to be a successful outcome in a settlement negotiation after days of trial. However, the record does not suggest that the District Judge displayed bias against Zhuang in making her decision. See Liteky v. United States, 510 U.S. 540, 555-56 (1994) (stating that "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not "establish[] bias or partiality"). On the contrary, the District Judge ensured that all relevant parties were

available and present at the motions hearing, including Zhuang's standby counsel, and provided Zhuang with ample time to argue her motion and testify about how she interpreted the arbitration clause.  Cf. id. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").  And, as explained above, the District Judge ultimately issued a thorough, reasoned decision that is supported by the record. There is thus no reason to believe that bias infiltrated the decision-making process in this case.  Given our disposition in this case, Zhuang's request for reassignment is moot.

Accordingly, we will affirm the decision of the District Court.[6]

---

[6] The parties' motions to seal their filings on appeal are granted; those filings will be sealed for 25 years.  Zhuang's motion to file a supplemental appendix is granted to the extent that the motion includes a document that was part of the record before the District Court.  To the extent that Zhuang seeks to expand the record on appeal, the motion is denied.